## DAVID J. LEWIS *vs.* THE DAILY NEWS COMPANY OF CUMBERLAND.

*Libel—What is Actionable per se—Innuendo—Demurrer.*

Falsely to publish of one that he "would be an anarchist if he thought it would pay," is libellous *per se*.

Every publication injurious to one's reputation is in law false and malicious until the presumption of falsehood is met by plea of the truth, or the presumption of malice is removed by showing a justifiable occasion or motive.

Upon a demurrer to the declaration in an action for libel, it is for the Court to determine whether the words charged amount in law to a libel, and whether the innuendo is fairly warranted by the language declared on.

An innuendo cannot enlarge, or add to the sense of the words declared on or properly impute to them a meaning which the publication either in itself or taken in connection with the inducement and colloquium does not warrant or fairly imply.

Appeal from the Circuit Court for Allegany County. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Ferdinand Williams* and *W. C. Devecmon* for the appellant.

*David W. Sloan* and *John G. Wilson* (with whom was *Robert R. Henderson*, on the brief), for the appellee.

To enable the plaintiff to recover the publication must be: 1. *Libelous per se*, in (*a.*) Imputing to him criminal conduct which would subject him to corporal punishment. *Wagaman* v. *Byers*, 17 Md. 183, or in (*b.*) Imputing to him conduct which tends to injure his reputation and expose him to hatred and contempt among honorable men. *Negley* v.

*Farrow*, 60 Md. 175. " That is from which the law would infer damage as being *necessarily* occasioned by the publication." *Newbold & Sons* v. *Bradstreet*, 57 Md. 52. In either which events, upon proof of publication, the plaintiff would be entitled to recover *general* damages for the loss to his standing and reputation, which the law presumes without proof, from the fact of the publication of the libel. 13 Am. and E. Ency. 325.

2. Or of such a character that special damage to the plaintiff may result from the publication as the natural and proximate, though not necessary consequence of the publication. *Newbold* v. *Bradstreet*, 57 Md. 53. And then the declaration should set forth in what way the special damage resulted. *Pollard* v. *Lyon*, 91 U. S. 225 ; *Walker* v. *Tribune Co.*, 29 Fed. Rep., 827. When words are not actionable *per se*, special damage must be alleged. *Stone* v. *Cooper*, 2 Denio, 293 ; *Golderberger* v. *Phil., &c., Co.*, 42 Fed. Rep., 42 ; *Dorsey* v. *Whipps*, 8 Gill, 457 ; *Wilson* v. *Cottman*, 65 Md. 190 ; *Cook* v. *Cook*, 100 Mass, 194 ; *Williams* v. *Hill*, 19 Wend. 305.

The right of the plaintiff in this case to recover, if at all, rests, therefore, under one or other of the subdivisions (*a*) and (*b*) of the first head. It can hardly be contended that the language complained of imputes to the plaintiff the commission of a crime, such as would subject him to corporal punishment. Taking the allegations of the declaration as true, for the purpose of argument, it charges no more than that the plaintiff for a money consideration, or if he thought it would inure his personal gain, would be an anarchist. A contingency must therefore happen before the plaintiff would commit a crime, if that which is charged be a crime. At most, this merely charges him with having a guilty mind, and to charge a man with having guilty thoughts or a guilty intent, is not to charge him with the commission of a crime. 13 *Amer. and Eng. Enc. of Law*, 353.

Before discussing the second subdivision it will be well to stop for a moment and get, if possible, the legal focus through

which Courts view suits of this character, and apply it to the language complained of in this case, bearing in mind also that it is part of a report of a political convention. " While Courts have felt that the best interests of society require in many cases that the slanderous words shall be considered as actionable *per se*, they have been careful to guard against encouraging an idle and vexatious spirit of litigation by affording too great facility to this species of action. *Griffin and wife* v. *Moore*, 43 Md. 25. " In deciding which words should be deemed actionable, the Courts have shown no wish to encourage a litigious disposition." *Dorsey* v. *Whipps*, 8 Gill, 463 ; *Rue* v. *Mitchell*, 2 Dallas, 58. " Actions of slander and libel, unless they are brought in respect of a serious charge, are not to be encouraged." *Jenner* v. *A'Beckett*, Law Reports, 7 Q. B. 11. The publication charges the plaintiff with nothing more than vacillation in his political beliefs. He had " made several talks " before a Populist Club ; he was representing the Sixth District on this occasion by proxy, and if it would advance his political ambitions he would join any other political organization. It is facetious in its character. To use the language of the Court in *Press Co.* v. *Stewart*, 110 Pa. St. 603, " at the most it is a harmless bit of pleasantry." And see also *Donaghue* v. *Gaffy*, 54 Conn. 257 ; *Homer* v. *Englehart*, 117 Mass. 539.

Every reflection upon a man's character or motives does not constitute a libel in law, and the super-sensitive person whose conduct is commented upon or criticised will not have his litigious spirit gratified by the Courts, unless the Court can see from the article that the language used tends to injure him and that it is properly pleaded, and in doing so the Court will adopt the innocent rather than the offensive meaning of the words, and will look at the circumstances under which they were used, in applying the meaning. In *Goldstein* v. *Foss*, 6 Barn. & Cres., 154, also reported in 2 Younge & Jervis, 145, the plaintiff was published as not a proper person to become a member of the

Society of Guardians for the protection of trade against swindlers and sharpers. This was held not to be a libel. In *Robinson* v. *Jermyn*, 1 Price, 11 (Exchequer Reports), the allegation was that the plaintiffs were not proper persons to be associated with and was held not to be a libel. In *Hackett* v. *Providence Telegram Pub. Co.*, 29 Atlantic Rep., 145, the declaration by innuendo charged the plaintiff with embezzlement, but the words complained of, which were to the effect that the plaintiff had collected money and failed to pay it over and put off the payment by various excuses, were held not to justify the innuendo, because he may have had other reasons. In *Trimble* v. *Anderson*, 79 Alabama, 514, it was by innuendo charged that notes had been obtained fraudulently upon a publication that they had been obtained without consideration. Held no libel because they might have been obtained otherwise. In *Mulligan* v. *Cole*, Law Rep. 10 Q. B., 549, the Court held that a publication which charged that plaintiff's connection with a certain institute had ceased, and that he was not authorized to receive subscriptions on its behalf, from which the innuendo was drawn that the plaintiff had falsely assumed and pretended to be authorized to receive such subscriptions, was not libelous, reading the words in their ordinary sense, and that the innuendo was not justified, inasmuch as the words conveyed no more than legitimate information to the public.

*The People* v. *Jerome*, 1 Mich. 142, was an action based upon a publication commenting upon the action of a druggist who "refused to contribute his mite" towards sprinkling the street in front of his place of business, in which the Court, in affirming an appeal from the judgment of the lower Court sustaining the demurrer, said: "The general rule that a libel upon an individual is a malicious defamation expressed either in print or writing, intending to blacken the memory of one who is dead, or the reputation of one that is alive, and expose him to public hatred, contempt and ridicule, is plain and easily understood, but its application,

in most of the cases which have been presented to the Courts, has been found to be difficult.   There are many cases in which the rule does not furnish a sure guide, and this, to my apprehension, is one of them."

In *Golderberger* v. *Phila. Grocery Pub. Co.*, 42 Fed. Rep., 42, the publication charged the President of the Grocers' Association with being actuated by a love of a per diem and not by patriotism or love of his guild, and was held not libelous.   The publication complained of contained these words : *"O, tempora! O, Mores!* What a pity that the grocers of this city could not find one so unselfish as to do such work without the hope of gain giving birth to activity." No special damage was alleged in this case, and the de-murrer was upon the ground that the complaint did not state facts sufficient to constitute a cause of action.   It was contended that the article held him up to contempt and ridicule, but the Court said :  " This claim calls for the con-sideration of the question whether any published sneer or pleasantry which may create a smile at the expense of the plaintiff, but which criticises his conduct in no important particular, is libelous *per se.*"

In *Capital and Counties Bank* v. *Henty*, Law Rep. 7 H. L. 744, in quoting from *Sturt* v. *Blagg*, 10 Q. B. 908, it is said : " In deciding on the question whether the words are capable of that meaning, he ought not, in my opinion, to take into account any mere conjectures which a person reading the document might possibly form as to some out of various motives or reasons which might have actuated the writer, unless there is something in the document itself or in other facts properly in evidence, which to a reasonable mind would suggest, as implied in the publication, those particular mo-tives and reasons."

The appellant relied in the lower Court upon the Illinois decision, *Cerveny* v. *Chicago Daily News Co.*, 13 L. R. A. 864, in which it was held that a publication which charged the plaintiff with being an " anarchist," was libelous *per se*. But we submit that there is a distinction between the Illinois

case and the present case, in the circumstances under which the words were used, and that the words complained of in the present case have as their plain meaning and application, a very different effect from the words used in the Illinois case. The words complained of in this action clearly contain the statement that the plaintiff is *not* an anarchist, and that he would only be such under a certain combination of beliefs and circumstances.

The innuendoes in the first and second counts of the declaration that the " plaintiff would for a money consideration be an anarchist," are plainly not warranted. The words actually used were that the plaintiff "would be an anarchist if he thought it would pay," and following as they did the statement that his political creed had vacillated between some other and populism, they clearly meant that he would be anything else in politics that he thought would pay him politically. There is nothing in the words themselves to suggest a money consideration, and if that meaning is to be imported into them they should be preceded by a colloquium.

We do not concede that the definitions of an anarchist, set out in the second and third counts of the declaration, could have been the meaning of this particular publication.

Generally an anarchist is understood to be a man who holds a certain set of opinions, but it certainly cannot be maintained for a moment, as it apparently is in the innuendoes, that every anarchist has actually been guilty of and engaged in unlawful, treasonable and felonious designs and acts, or is now violently seeking to overturn all government, law and order.

Thus the innuendoes clearly " expand and enlarge the meaning of the words used, and give to them a particular meaning different from that in which they would ordinarily be understood " by those reading the publication complained of, and they should therefore be rejected and the demurrer sustained, unless the words are actionable in themselves.

McSHERRY, J., delivered the opinion of the Court.

This is an action of trespass on the case for libel. The declaration contains three counts. A demurrer to the whole declaration was filed and upon being ruled good judgment was entered for the defendant, and the plaintiff then took this appeal. The defendant is the owner, proprietor and publisher of a newspaper called the " Daily News." The words which are complained of and which were published by the defendant are as follows : " Mr. davy lewis, proxy for some one in the Sixth District, a member of the Populist Club in this city, before which he has made several talks, who would be an anarchist if he thought it would pay." Meanings are ascribed to these words by the innuendoes employed in the three counts of the *narr.* The demurrer, of course, admits the publication of the alleged defamatory language by the defendant, its untruthfulness and the malice which prompted its promulgation ; but raises the questions, first, whether the words as explained by the innuendoes are actionable, and secondly, whether the innuendoes fairly express the effect and meaning of the published words. Upon demurrer it is always the province of the Court to determine whether the words charged in the declaration amount in law to libel or slander. *Dorsey* v. *Whipps*, 8 Gill, 462 ; *Haines* v. *Campbell*, 74 Md. 158 ; *Avirett* v. *The State*, 76 Md. 510. And it is equally matter of law as to whether an innuendo is good ; that is to say, whether it is fairly warranted by the language declared on, when that language is read, either by itself, or in connection with the inducement and colloquium, if there be an inducement and colloquium set forth. *Avirett* v. *State, supra ; Solomon* v. *Lawson*, 8 Q. B. 828. But the innuendo cannot enlarge, extend or add to the sense or effect of the words declared on, or properly impute to them a meaning which the publication, either in itself, or taken in connection with the inducement and colloquium, does not warrant or fairly imply.

Now, what words are libelous ? " It is well settled that any publication which tends to injure one's reputation and

expose him to hatred or contempt, if made without lawful excuse, is libelous." *Negley* v. *Farrow*, 60 Md. 175; *Snyder* v. *Fulton*, 34 Md. 128; *Hagan* v. *Hendry*, 18 Md. 191. Malice, in an action of this kind, consists in intentionally doing without justifiable cause that which is injurious to another, and everything injurious to the character of another, is, in this action, taken to be false, until it is shown by plea to be true. Therefore every publication injurious to the character, is, in law, false and malicious, until the presumption of falsehood is met by plea of the truth, or the presumption of malice is removed by showing a justifiable occasion or motive. 1 *Am. Lead. Cases* (ed. of 1857), 116, notes to the case of *Steele* v. *Southwick*.

The words complained of charge that the plaintiff "would be an anarchist if he thought it would pay," and the innuendo defining their import in the first count is, "meaning thereby and intending to charge that the plaintiff would for a money consideration be an anarchist." The second count, after setting forth a definition of the word anarchist, explains the meaning of the alleged libelous publication to be that the plaintiff would for a money consideration be an anarchist and engage in the unlawful, treasonable and felonious designs and acts of anarchists. And the third count avers that the word anarchist means a person who, actuated by mere lust of plunder, seeks to overturn by violence all constituted forms and institutions of society and law and order and all right of property; and that the words "if he thought it would pay," mean that the plaintiff would, if he thought it would inure to his personal gain, from mere lust of plunder, endeavor to destroy all right of property and all law and order.

Falsely publishing of an individual that he is an anarchist is libelous. *Cerveny* v. *Chicago Daily News Co.*, 13 L. R. A. 864. The declaration alleges that an anarchist is universally accepted by all law-abiding persons in all countries as meaning an enemy and conspirator against all law and social order, and as one who uses unlawful, violent

and felonious means to destroy property and human life, and as one who is treasonable to the government under which he lives, and employs assassination of persons in authority as means of accomplishing his unlawful designs against society. Obviously, then, to publish of and concerning an individual that he is such an enemy of law, of order, of society and of human life, is grossly libelous, and is far from merely charging him, as suggested in the argument, with being only a political propagandist, advocating visionary schemes, for anarchy, as defined in the declaration, and as generally understood, is avowed hostility to all governments, and open antagonism to all political parties, every one of which professes to support some form of government, and generally that which its members consider the best. It cannot be doubted that all law-abiding, right-thinking men regard with abhorence the individual who justifies or approves of the bloody and atrocious means to which anarchists resort, the world over, in furtherance of their reckless and revolutionary designs against every form of government and against every right of property. It is equally apparent, that to accuse another of being an anarchist, in the sense in which the term is generally accepted, is to accuse him of that which will inevitably injure his reputation and expose him to obloquy and ignominious reproach. If this be so, then, to publish of another that he " would be an anarchist if he thought it would pay," is to impute to him the possession of that degree of moral obliquity and turpitude which would mark him as a fit person, if he were personally benefited thereby, to do the violent and felonious acts of which anarchists are known or believed to be guilty. It fixes upon him a stigma which would cause all honest and upright people to shun him, because a man who would be an anarchist if it would pay him to be one, is of necessity not only a person devoid of all moral restraint, but one under the dominion of the worst of human passions, and ready, for self-aggrandizement, to commit the most grievous crimes against the State, against so-

ciety and against the individual. And it matters not whether the alleged motive that influences him be an expectation of pay in actual money, or the hope of personal gain inspired by the mere lust of plunder, for in either event the obvious meaning of the charge is, that for gain, however acquired, he would be willing to become an obdurate criminal, an enemy of mankind and a conspirator against the government under which he lives. Surely such a person would merit universal execration, and to charge that an individual would be thus guilty for gain, would undeniably subject him to contempt and hatred, and would, therefore, be actionable in itself.

It only remains to inquire whether the innuendoes do more than point out or define the meaning of the libelous words ; and about this there can be no possible difficulty. They neither enlarge them nor give to them a significance at variance with their natural and ordinary meaning. The plaintiff is named in the article. He is named, too, in such a manner as necessarily to expose him to ridicule, for the initial letters of both his christian and surname are printed in small type, with an obvious view of belittling him in the public estimation. The innuendoes further set forth the meaning of the words "anarchist" and "pay ;" and they ascribe to them their usual and generally accepted import, defining them in a paraphrastic way, and pointing out that they were intended to apply to the plaintiff. This is strictly within the office of an innuendo.

For the reasons we have given we consider the declaration sufficient in law. We do not deem it necessary to examine and review the various cases cited by the appellee's counsel in the exceptionally able arguments made by them at the bar, because the law respecting libel is too well settled in Maryland to be shaken by decisions elsewhere, even if upon a strict analysis those decisions were shown to be in conflict with our own.

*Judgment reversed with costs above*
*and below, and new trial awarded.*

(Decided June 19th, 1895.)