WILLIAM ZANKER *vs.* FRANK D. LACKEY.

1. LIBEL AND SLANDER—DISTINCTION BETWEEN WRITTEN AND ORAL WORDS OF DEFAMATORY NATURE, WITH RESPECT TO THEIR ACTIONABLE CHARACTER, STATED.

Spoken words, sufficient to maintain suit for slander, will also maintain suit for libel, if written or printed and published; but many accusations, which would not be actionable when spoken without proof of special damages, would be libelous *per se* when written or printed and published.

2. LIBEL AND SLANDER—DEFAMATORY WORDS MAY BE ACTIONABLE PER SE OR ACTIONABLE ONLY ON ALLEGATIONS SHOWING DAMAGES AND MAKING THEM APPLY TO AGGRIEVED PERSON.

Defamatory words may be actionable *per se*, as words conveying to person of average intelligence a meaning tending to blacken reputation of another,

or hold him in contempt and ridicule, or words may be actionable only on allegations making them applicable to aggrieved person and on proof of damages resulting therefrom.

3.  LIBEL AND SLANDER—STATEMENT FROM WHICH IT WAS IMPOSSIBLE TO TELL TO WHOM IT WAS INTENDED TO APPLY HELD NOT ACTIONABLE PER SE.

Statement by member of stock exchange, that, while he had not violated any rules of the exchange, it appeared to satisfaction of exchange that somebody in his employ did, *held* not actionable *per se* as to his general manager, as from words alone it is impossible to tell to whom they were intended to apply.

4.  LIBEL AND SLANDER—INNUENDO CANNOT CHANGE OR ENLARGE MEANING OF ALLEGED SLANDEROUS WORDS.

While the *innuendo* may bring out more clearly the meaning of alleged slanderous words, it cannot change or enlarge their meaning, or place on them a construction not warranted by facts set forth in the inducement or *colloquium*.

5.  LIBEL AND SLANDER—STATEMENT BY STOCKHOLDER THAT EMPLOYEE OF HIS VIOLATED RULES OF EXCHANGE, NOT EXPRESSLY NAMING ANY ONE, HELD NOT LIBELOUS AS TO HIS GENERAL MANAGER.

Statement by member of Stock Exchange, that it appeared to satisfaction of exchange that an employee of his had violated rules of Stock Exchange *held* not libelous as to his general manager, when it did not appear that he did not have other employees, or that it was generally known plaintiff was defendant's general manager.

(*January* 16, 1925.)

PENNEWILL, C. J., and RICHARDS, J., sitting.·

*E. Ennalls Berl* for plaintiff.

*Clarence* A. *Southerland* for defendant.

Superior Court for New Castle County, September Term, 1924.

Action for libel, No. 12, January Term, 1924. Demurrer to declaration.

RICHARDS, J., delivering the opinion of the Court:

The declaration sets forth that the defendant, Frank D. Lackey, did on or about the 15th day of March, A. D. 1923, make a false, scandalous, malicious and defamatory statement to one Thomas Hill, a reporter for the Evening Journal, a daily newspaper published in the city of Wilmington, in order that the said Thomas Hill might publish the same in the said Evening Journal. Said statement was in the following words:

"Yes, I was charged with a technical violation of the rules of the Stock Exchange (meaning the bucketing of orders as aforesaid and the filling of the same at different prices than those reported to customers as aforesaid). While I had not personally violated any rules, it appeared to the satisfaction of the Stock Exchange that somebody in my employ (meaning the plaintiff) did. While I, of course, regret it very much, it does not affect me financially, and will not affect my business or business connections in any way (meaning that since the plaintiff and not he, the defendant, had committed the irregularities above described, such irregularities could not affect him, the defendant, financially, although they might affect financially the plaintiff, who had committed them.)"

[1] That there is a distinction between written or printed and oral words of a defamatory nature, with respect to their actionable character seems to be well settled by the courts. Spoken words sufficient to maintain a suit for slander will also maintain a suit for libel if written or printed and published, but many accusations and charges which should not be actionable when spoken without proof of special damages, would be libelous *per se* when written or printed and published. *Rice v. Simmons*, 2 *Harr.* 417, 31 *Am. Dec.* 766; *Obaugh v. Finn*, 4 *Ark.* 110, 37 *Am. Dec.* 773; *Tillson v. Robbins*, 68 *Me.* 295, 28 *Am. Rep.* 30; *Augusta Evening News v. Radford*, 91 *Ga.* 494, 17 *S. E.* 612, 20 *L. R. A.* 533, 44 *Am. St. Rep.* 53; *Cerveny v. Chicago Daily News Co.*, 139 *Ill.* 345, 28 *N. E.* 692, 13 *L. R. A.* 864; *Prosser v. Callis*, 117 *Ind.* 105, 19 *N. E.* 735; *Riley v. Lee*, 88 *Ky.* 603, 11 *S. W.* 713, 21 *Am. St. Rep.* 358; *Clark v. Binney*, 2 *Pick.* (*Mass.*) 113; *Feder v. Herrick*, 43 *N. J. Law*, 24; *Moore v. Francis*, 121 *N. Y.* 199, 23 *N. E.* 1127, 8 *L. R. A.* 214, 18 *Am. St. Rep.* 810; *Moss v. Harwood*, 102 *Va.* 386, 46 *S. E.* 385.

[2] Defamatory words either spoken or written and published may be actionable *per se*, namely, words of such a character as would alone convey to a person of average intelligence a meaning or understanding tending to blacken the reputation of another person or hold him in contempt and ridicule; or such words may be actionable only upon allegations making them applicable to the aggrieved person and upon proof of damages resulting therefrom. *Morey v. Morning Journal Ass'n*, 123 *N. Y.* 207, 25 *N. E.* 161, 9 *L. R. A.* 621, 20 *Am. St. Rep.* 730; *Woodhouse v. Powles*, 43 *Wash.* 617, 86 *Pac.* 1063, 8 *L. R. A.* (*N. S.*) 783, 117 *Am. St. Rep.*

1079, 11 *Ann. Cas.* 54; *State v. Brady*, 44 *Kan.* 435, 24 *Pac.* 948, 9 *L. R. A.* 606, 21 *Am. St. Rep.* 296; *Newbit v. Statuck*, 35 *Me.* 315, 58 *Am. Dec.* 706; *Melcher v. Beeler*, 48 *Colo.* 233, 110 *Pac.* 181, 139 *Am. St. Rep.* 273; *Tracy v. Hacket*, 19 *Ind. App.* 133, 49 *N. E.* 185, 65 *Am. St. Rep.* 398; *Childers v. San Jose Mercury P. & P. Co.*, 105 *Cal.* 284, 38 *Pac.* 903, 45 *Am. St. Rep.* 40.

In the case of *Rice v. Simmons*, 2 *Harr.* 417, 31 *Am. Dec.* 766, Judge Harrington used the following language:

"On the whole, I regard it as a principle of the common law, to be collected if not from all the cases, at least from all that at this day and in this country, can be recognized as authority; that written slander to be actionable, must impute something which tends to disgrace a man, lower him in, or exclude him from society, or bring him into contempt or ridicule; and that the court must be able to say from the publication itself, or such explanations as it may admit of, that it does contain such an imputation, and has legally such a tendency."

In the case of *Layton v. Harris*, 3 *Harr.* 406, Chief Justice Booth defined libel in these words:

"A libel is a malicious publication in printing, writing, signs or pictures, imputing to another something which has a tendency to injure his reputation; to disgrace or degrade him in society, lower him in the esteem and opinion of the world, or bring him into public hatred, contempt or ridicule."

[3]   Are the words of the publication upon which this action is based, words of such import that the general public would consider them defamatory and, therefore, actionable *per se?* No particular person was named in the publication, and when the words named in the declaration as defamatory are considered alone, it is impossible to tell to whom they were intended to apply, consequently they cannot be considered defamatory of the plain-. tiff. We are, therefore, of the opinion that the words were not actionable *per se*.

Having arrived at this conclusion, we are next called upon to decide whether the words of the publication, when considered in connection with the allegations of the inducement explaining their application to the plaintiff, are libelous.

The terms generally applied to this method are the "inducement," "*colloquium*" and "*inneundo*."

The plaintiff has alleged by way of inducement that the de-

fendant, before and up to the time of the publication in question was a member of the New York Stock Exchange, and proprietor of a stockbroker's office at 923 Market street, Wilmington, where for a number of years the plaintiff was employed as general manager, and that he, the plaintiff, had for a long time possessed a good name and reputation among his fellow citizens.

[4]    The *colloquium* sets forth that the defendant wrongfully, injuriously and maliciously contrived to injure and damnify the plaintiff as to his good name and reputation, to bring him to public scandal, infamy and disgrace with Stock Exchange houses, his business associates and good citizens, and to cause it to be believed and suspected that he had committed irregularities, such as bucketing orders, and reporting to customers of the defendant the sale of stocks and securities at prices different from those at which they were actually bought and sold for, by making the statement hereinabove fully set forth to one Thomas Hill, a reporter for the Evening Journal, a daily newspaper published in Wilmington, in order that the same might be published in said paper. By the *innuendo* it is pointed out more clearly the meaning which the plaintiff places upon the words of the publication and their especial application to him by the use of the words contained in the brackets, such as, [meaning the plaintiff]. While the *innuendo* may explain and bring out more clearly the meaning of the words spoken or published, yet it cannot change or enlarge their meaning, or place upon them a construction not warranted by the facts set forth by the inducement or *colloquium*.    *McLaughlin v. Fisher*, 136 *Ill.* 111, 24 *N. E.* 60; *Gaither v. Advertiser Co.*, 102 *Ala.* 458, 14 *So.* 788; *Central of Georgia Ry. Co. v. Sheftall*, 118 *Ga.* 865, 45 *S. E.* 687; *Stutsman v. Stutsman*, 32 *Ind. App.* 73, 66 *N. E.* 773, 67 *N. E.* 950; *Bearce v. Bass*, 88 *Me.* 521, 34 *Atl.* 411, 51 *Am. St. Rep.* 446; *Quinn v. Prudential Insurance Co.*, 116 *Iowa* 522, 90 *N. W.* 349; *Lewis v. Daily News Co.*, 81 *Md.* 466, 32 *Atl.* 246, 29 *L. R. A.* 59; *Price v. Conway*, 134 *Pa.* 340, 19 *Atl.* 687, 8 *L. R. A.* 193, 19 *Am. St. Rep.* 704; *Hackett v. Providence Tel. Pub. Co.*, 18 *R. I.* 589, 29 *Atl.* 143.

[5]    The publication relied upon in this case does not ex-

pressly name any one, and were it not for the fact that it is shown by way of inducement that the plaintiff was employed by the defendant for a number of years, as general manager, there would be nothing in the declaration which would point to him as the person intended by the defendant when he made the statement to Hill which was subsequently published in the Evening Journal.

It is not brought out that the plaintiff was the only person employed by the defendant at the time he was expelled from the stock exchange or previous thereto, consequently would it be fair to assume, as it would be necessary to do, that he was the person referred to in said publication? It may not have been generally known that the plaintiff was general manager of the defendant's business, and if such fact was generally known, we think it would be going too far to say that the defendant was referring to him to the exclusion of all other employees. The publication certainly might be applied to any one employed by the defendant at the time he was expelled from the Stock Exchange, and possibly to any one employed by him previous to that time.

We, therefore, feel that it does not appear that the language used by the defendant was sufficient to affect the plaintiff, and that the demurrer should be sustained.