94 A.2d 385 (1952)
KLEIN
v.
SUNBEAM CORP.
Supreme Court of Delaware.
December 31, 1952.
*386 John Van Brunt, Jr., and David Snellenberg, II (of Killoran & Van Brunt), Wilmington, for appellant.
*387 David F. Anderson and James L. Latchum (of Berl, Potter & Anderson), Wilmington, for appellee.
WOLCOTT and TUNNELL, JJ., and BRAMHALL, Vice-Chancellor, sitting.
WOLCOTT, Justice.
The appellant (hereinafter called plaintiff), a retail store operator, sued the appellee (hereinafter called defendant), an Illinois corporation, for the publication of an alleged libelous statement. The complaint alleges in substance that the defendant sent to all of its distributors in the United States a letter which, in particular, was received by four such distributors in the State of Delaware; that the letter in question was understood by the four Delaware distributors to refer to the plaintiff; that the defendant intended the letter to refer to the plaintiff, and that the statement in the letter referring to the plaintiff was untrue, false and defamatory.
Attached to the complaint as an exhibit is the letter in question. The allegedly libelous portion of the letter is as follows:
"We [defendant] ourselves have been seriously embarrassed in two current Fair Trade suits in two different cities when the defendants submitted affidavits purporting to show that Sunbeam distributors themselves violated our Fair Trade Contract by selling at dealers' cost prices to `people coming in off the street'. Prompt investigation revealed that the defendants obtained such affidavits in a tricky manner by apparently inducing employees of bona fide dealers (who are on a cash basis) to make cash purchases from the distributors presumably for their employers  but then stating in affidavits that the purchases were made by them as individuals, thus inferring that the distributors would sell at such prices for cash to anyone of the general public."
In order to connect the plaintiff to the allegedly libelous portion of the letter, it is alleged that at and prior to the date the letter was mailed, the plaintiff was named as a defendant in a civil action instituted in the Court of Chancery of this state in which action the defendant was the plaintiff.
After the filing of the complaint the defendant appeared specially and moved to quash the service which had been made upon an officer of the defendant temporarily within the State of Delaware. The question raised by the motion to quash was whether or not the defendant was "doing business" within the State of Delaware to an extent justifying the service of process upon an agent of a foreign corporation pursuant to the provisions of 1935 Code, § 4589. The court below denied the motion to quash.
Thereupon, the defendant filed, pursuant to Rule 12(b) (6) of the Rules of the Superior Court, a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, on the ground that no libelous matter was contained in the letter sent by the defendant to its Delaware distributors. The court below dismissed the complaint upon the authority of Zanker v. Lackey, 2 W.W.Harr. 588, 128 A. 373, a 1924 decision of the Superior Court sustaining a demurrer to a declaration in an action on the case for libel.
From the order dismissing the complaint the plaintiff has taken this appeal. In the brief filed by the defendant, the question of the jurisdiction of the Superior Court over the defendant has again been raised. Thus, this appeal presents for our decision two questions, viz., (1) Does the Superior Court have jurisdiction in this cause over the defendant?, and (2) Does the complaint state a cause of action for libel upon which relief can be granted?

(1) Does the Superior Court have jurisdiction in this cause over the defendant?

The jurisdiction of the Superior Court over the defendant in this cause was raised below by the defendant's motion to quash the service of process upon it. The defendant, an Illinois corporation, is not registered under 1935 Code, § 2247 and has not designated an authorized agent in this state to receive service of process. The service of process in the instant cause was made upon a Vice-President of the defendant who was temporarily in Delaware and was purportedly *388 made pursuant to 1935 Code, § 4589. It was valid if the defendant was doing business in Delaware to an extent to make it amenable to suit within the due process requirements of Article XIV, § 1 of the Federal Constitution and of 1935 Code, § 2247. The motion to quash the service was made upon the theory that the defendant was not doing business within the State of Delaware.
The court below denied the motion to quash the service and treated the question as one to be decided solely under the Fourteenth Amendment of the Federal Constitution. Under the rules announced by the United States Supreme Court, a foreign corporation becomes subject to suit in personam within a state other than that of its incorporation when its business activities within that state are such as to justify the inference that it is present there. Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710. This is the so-called "doing business" rule.
The question of what constitutes "doing business" in a state other than that of incorporation has been passed upon repeatedly by the federal courts. The process of judicial decision has culminated in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, which laid down the rule that a foreign corporation is doing business in a state sufficiently to constitute corporate presence in that state when the business done amounts to solicitation of business with some additional evidence of business activity within the confines of the state. Largely upon the authority of the International Shoe Co. case, the court below denied the defendant's motion to quash the service of process.
The business activities of the defendant in Delaware consisted of, first, the active solicitation of business through non-resident salesmen and otherwise over a number of years; second, a continuous course of supervision and policing of the defendant's wholesalers and retailers in connection with the maintenance of a price structure for its products pursuant to its Fair Trade Contracts with Delaware distributors; third, on one occasion, in connection with a sales promotion program, the warehousing in Delaware of a large inventory of electrical appliances from which orders to Delaware retailers were filled; fourth, the institution against the present plaintiff of a suit to enforce its Fair Trade Contract prices; and, fifth, generally speaking, the promotion, advertising and display of its products in Delaware.
The court below found the recited instances of business activities of the defendant as facts. These findings are supported by the record and indeed are not challenged by the defendant. Recognizing that each fact standing alone would probably not justify a finding of corporate presence, the court below held that in the aggregate the activities of the defendant amounted to more than mere solicitation of business and thus warranted a finding of corporate presence in Delaware. The court attached particular significance to the storage of an inventory of products in Delaware from which deliveries were made to Delaware retailers and to the defendant's efforts by supervision and policing to maintain its established price structure for its products, since, upon analysis, those efforts were nothing more than direct attempts in Delaware by the defendant to protect its property interest in its trade names and the good will built up for them. Such matters may be said to be a manifestation of corporate presence. Cf. La Porte Heinekamp Motor Co. v. Ford Motor Co., D.C., 24 F.2d 861.
On this showing, the court below ruled that the defendant was present in Delaware within the meaning of the due process requirements of the Fourteenth Amendment to the Federal Constitution. We agree. However, the defendant makes an argument not based upon the Fourteenth Amendment, presumably also made to the court below, although certainly not with the same degree of emphasis now placed upon it by the defendant. This argument is that 1935 Code, § 2247, requiring the registration and certification of agents for the acceptance of service of process by foreign corporations seeking to do business in this state, also defines for all other purposes what shall constitute the "doing of business" by a foreign corporation within *389 the State of Delaware. The argument is based upon the following language appearing in the statute:
"* * *; provided, however, that no corporation created by the laws of any other State, or the laws of the United States, shall be deemed to be doing business in this State (nor shall such corporation be required to comply with the provisions of this Section) under the following conditions, or any of them:
* * * * * *
"(b) If it employs salesmen, either resident or traveling, to solicit orders in this State, either by display of samples or otherwise (whether or not maintaining sales offices in this State), all orders being subject to approval at the offices of the corporation without this State, and all goods applicable to such orders being shipped in pursuance thereof from without this State to the vendee or to the seller or his agent for delivery to the vendee; provided, that any samples kept within this State are for display or advertising purposes only, and no sales, repairs, or replacements are made from stock on hand in this State;
* * * * * *
"(d) If its business operations within this State, although not falling within the terms of paragraphs (a), (b) and (c) above, or any of them, are nevertheless wholly interstate in character."
We think that the argument made by the defendant as to the proper construction of § 2247 is correct; that is to say, that the section requires the registration of foreign corporations locating in Delaware for the purpose of doing business within its boundaries, and, at the same time, prescribes what acts shall be sufficient to exempt a foreign corporation from the service of process and suit in Delaware courts. This seems clear by reason of the fact that in the proviso quoted above it is provided that if any of the stated conditions are met, such a corporation shall not be deemed to be doing business and, alternatively, shall not be required to comply with the registration provisions of the section. The duality of the Delaware statute appears to be unique among the states.
However, we think the motion to quash service still must be denied. We think the defendant must be held to have been doing business within the State of Delaware so as to subject it to the service of process within the definition of doing business in § 2247. The activities related above of the defendant in Delaware do not fall wholly within either sub-section (b) or subsection (d) quoted above. For example, sub-section (b) does not permit sales, repairs or replacements to be made from stock on hand in this state, yet, the defendant, shortly before the institution of this suit, made sales from stock owned by it and held in a warehouse in Delaware. Nor, by the same token, can the defendant bring itself within the provisions of subsection (d). Its filling of orders from stock on hand in Delaware and its policing of its Fair Trade Contracts take it from out of the purview of sub-section (d).
Whether, therefore, the motion be considered as being governed solely by the requirements of due process of the Fourteenth Amendment of the Federal Constitution, or whether it be considered as being governed by a limitation upon those concepts imposed by our State Legislature in 1935 Code, § 2247, the result is the same. The defendant is doing business in Delaware and, thus, may be subjected to suit in the courts of Delaware. The motion to quash the service upon the defendant was properly denied.

(2) Does the complaint state a cause of action for libel upon which relief can be granted?

In Rice v. Simmons, 2 Harr. 417, the former Court of Errors and Appeals considered at length the general nature of written defamation. In that case an action for libel was brought seeking damages for the publication of a writing in substance cautioning the public against receiving from the plaintiff or his agent any papers relating to the defendant's business, since such papers had been "purloined" from the defendant and had fallen into the hands of the plaintiff who had endeavored to collect upon them, although the obligations thereby *390 evidenced had been discharged by the defendant. After reviewing at considerable length the then existing authorities, the court unanimously held the writing before it to be libelous.
It is clear from the opinion in Rice v. Simmons that spoken defamation to be actionable per se must impute to the plaintiff the commission of a punishable crime, the having of an infectious disorder such as would tend to injure a person in his office, trade or business, or produce special damage. With respect to written defamation, however, a publication affecting character may be libelous even though it does not impute a punishable crime. Written defamation will be actionable if it imputes something which tends to disgrace a man, lower him in, or exclude him from, society, or bring him into contempt or ridicule. The publication before the court in Rice v. Simmons was held to be libelous per se because it represented the plaintiff as "a dishonorable, if not a dishonest, man" and because it contained a derogatory imputation to his "reputation and standing".
In discussing the publication before it, the court stated that it was not necessary to support an action for libel that the writing contain "a direct and open charge". It was sufficient if by the general tenor of the language a degrading imputation, however indirect, is conveyed. The language used must be construed in its ordinary sense, but the surrounding facts and circumstances may give the actual language used a very different implication which may be presented "by proper averments capable of proof". In this connection, the court said:
"Though the law requires the imputation of something that will dishonor or degrade a man, or lessen his standing in society, it does not require that such imputation should be in express terms, nor does it afford any countenance or refuge for covert and insidious slander. If it did so, it would extend but little protection to reputation. The character of a libel is to be charged of by the effect it produces on the mind; it does not always happen * * * that you can at once put your finger on the libelous matter, and the attempt to show in what it consists may depend much on inferential reasoning; * *."
The rules thus announced in Rice v. Simmons have consistently been followed and applied by the Delaware courts. Cf. Layton v. Harris, 3 Harr. 406; Todd v. Every Evening Printing Co., 6 Penn. 233, 66 A. 97; Snavely v. Booth, 6 W.W.Harr. 378, 176 A. 649; Gordon v. News-Journal Co., 6 W. W. Harr. 396, 176 A. 657. Under the circumstances, we think Rice v. Simmons is controlling authority in the cause now before us.
The court below dismissed the complaint upon the authority of Zanker v. Lackey, holding that the alleged facts of the instant case could not be distinguished from the facts alleged in the declaration in the Zanker case, and that therefore, the decision in the Zanker case under principles of stare decisis required the dismissal of the complaint in the cause at bar.
Zanker v. Lackey was an action for libel. The alleged libel was that the defendant had stated to a newspaper reporter that while he, a stockbroker, had been charged with a technical violation of the rules of the stock exchange (bucketing orders of customers), although he had not personally done so, the charge had been made because some one in his employ had violated the rules. It was specifically alleged in the declaration that the defendant in referring to some one in his employ meant the plaintiff. The declaration was demurred to and the demurrer was sustained.
The court recognized the rules respecting libel laid down in Rice v. Simmons, but, in discussing the question of whether the words complained of were libelous per se, the court said:
"No particular person was named in the publication, and when the words named in the declaration as defamatory are considered alone, it is impossible to tell to whom they were intended to apply, consequently, they cannot be considered defamatory of the plaintiff. We are, therefore, of the opinion *391 that the words were not actionable per se."
We think the foregoing statement from the opinion in the Zanker case is erroneous in law. Under the rules announced in Rice v. Simmons, it is not necessary that the individual defamed in writing need be positively identified in the defamatory language itself, for it seems clear that defamatory language may be made applicable to the plaintiff by extraneous evidence showing that the plaintiff was intended to be referred to by the maker and was understood to be referred to by the reader. Indeed, under the rules of common-law pleading prevailing in this state at the time the Zanker case was decided, the function of the inducement and colloquium was to allege extraneous facts in addition to the alleged libelous statement which would explain the libelous nature of the language and connect it to the plaintiff.
We think the court in Zanker v. Lackey did not bear this clearly in mind. As we read the opinion, it seems reasonable to conclude that the holding precluded the maintenance of an action for libel upon the words charged in the declaration, even though they impute dishonest conduct, irrespective of what the proof may have shown as to the understanding of the public concerning the identity of the employee referred to. If that be the holding in Zanker v. Lackey, we think it erroneously decided and overrule it.
If, however, the Zanker case be considered as having been decided because of the strict requirements of common-law pleading, and if it be assumed that the colloquium was insufficient to connect the slanderous language with the plaintiff, then the decision is no authority in the case at bar since the requirements of common-law pleading in the Superior Court of this state were abolished by the present rules of the Superior Court.[1]
Under the present rules of the Superior Court a cause of action need not be set forth with all the technical exactitude of allegation necessary under the rules of common law pleading. The present rules adopt a system of notice pleading rather than fully informative pleading as was theretofore required. The theory underlying the present rules is that a plaintiff must put a defendant on fair notice in a general way of the cause of action asserted, which shifts to the defendant the burden to determine the details of the cause of action by way of discovery for the purpose of raising legal defenses. 2 Moore's Federal Practice, (2d Ed.), § 8.03. Pfeiffer v. Johnson Motor Lines, Del.Super., 89 A.2d 154.
Thus, a complaint will not be dismissed for failure to state a claim upon which relief can be granted unless it appears to a certainty that the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof. 2 Moore's Federal Practice, (2d Ed.), § 12.08; Morgan v. Wells, Del.Ch., 80 A.2d 504; Costello v. Cording, Del. Super., 91 A.2d 182.
The complaint in the instant case sets forth as an exhibit the exact language allegedly libelous. It states that the language was intended to refer to the defendant and was understood by the recipients of the letter as referring to the defendant. Conceivably, the proof might well show this to be the fact and if such is the fact, a cause of action would be made out justifying judgment for the plaintiff, if the language of the letter is libelous. Certainly, the complaint gives fair notice to the defendant of the general nature of the cause of action asserted against it.
It is not unreasonable to assume that the plaintiff's proof might show that the recipients of the letter in Delaware knew that the plaintiff had been sued by the defendant in a Fair Trade suit then pending in the courts, and that they believed after reading the letter that the defendant accused him of conducting his defense to that suit in a shady, underhand manner by obtaining falsely-colored affidavits. If upon trial *392 the plaintiff's proof establishes that assumption, then it seems to us the language falls squarely within the rule of Rice v. Simmons, since it is an imputation that the plaintiff is a "dishonorable, if not a dishonest, man".
We think, therefore, that it cannot be said that under no reasonably conceivable set of circumstances, which might be proven in the event of a trial, can the plaintiff's complaint be said to be clearly without merit. If the proof shows that the recipients of the letter in Delaware believed it to refer to the plaintiff and if they reasonably drew from the language an imputation degrading the character of the plaintiff as a business man, then we think that the letter is libelous. It follows, therefore, that the motion to dismiss the complaint should have been denied.
The defendant argues that it is necessary in a complaint for libel to allege that the statement was made maliciously unless the language is sufficient to impute to the plaintiff the commission of an indictable crime. We do not think that such is the law with respect to actions for libel. As we have seen, any imputation of a degrading nature is libelous and, we believe, under the Delaware authorities is libelous per se. Rice v. Simmons; Gordon v. News-Journal Co.; Todd v. Every Evening Printing Co.; Layton v. Harris
The defendant cites in support of its argument with respect to the requirement of an allegation of malice Parke v. Blackiston, 3 Harr. 373; Kinney v. Hosea, 3 Harr. 397; Pleasanton v. Kronemeier, 6 Boyce 81, 97 A. 11. All of these cases were actions for slander. Whether the defendant is correct in its interpretation of the cited cases dealing with the necessity of either express or implied malice in an action for slander, or whether the question of malice is one bearing upon the amount of damages to be awarded and not to the existence of a cause of action, we do not have to decide. The question is not before us. We are concerned solely with an action for libel and with respect to it the presence or absence of malice is a question of fact to be determined by the jury in awarding damages. Rice v. Simmons; Delaware Fire & Marine Ins. v. Croasdale, 6 Houst. 181, 210.
The defendant finally argues that the language in question was made in the course of the defendant's business and is therefore a privileged communication. In the law of libel, privileged communications are divided into two classes, those absolutely privileged and those conditionally privileged. The class of absolutely privileged communications is limited to legislative and judicial proceedings. 33 Am.Jur. 123. Qualified privilege is extended to communications made under circumstances casting on the writer the duty of making the facts known to third persons, or to communications made in good faith on a subject in which the writer has an interest made to a person having a corresponding interest. 33 Am.Jur. 124.
In any event, we think the question of qualified privilege is a matter for defense depending upon the facts and circumstances surrounding the making of the publication. Star Publishing Co. v. Donahoe, 3 Penn. 545, 53 A. 1028, Id., Del., 58 A. 513, 65 L.R.A. 980. Since it is a matter of affirmative defense it may not be raised by a motion to dismiss under Rule 12(b)(6) but should be made a matter of answer to be supported by proof at the trial.
The judgment of the court below dismissing the complaint will be reversed and the cause remanded for further proceeedings not in conflict with this opinion.
NOTES
[1] The present rules of the Superior Court, effective January 1, 1948, are modeled upon and in substance the same as the Federal Rules of Civil Procedure, 28 U.S.C.A.