William L. SPENCE, Jr., Plaintiff,
Appellant,

v.

Allison J. FUNK and Communications
Consultants, Inc., a Delaware Corpo-
ration, Defendants, Appellees.

Supreme Court of Delaware.

Submitted * April 14, 1978.

Decided Dec. 21, 1978.

* The appeal was submitted to the present panel on September 22, 1978.

**968** ■ ■

Richard S. McCann, Newark, for plaintiff, appellant.

Richard K. Herrmann of Bayard, Brill & Handelman, Wilmington, for defendants, appellees.

Before DUFFY, J., MARVEL, Chancellor, and HARTNETT, Vice Chancellor.

DUFFY, Justice:

The issue in this appeal is whether a complaint alleging libel is sufficient to withstand a motion to dismiss based upon failure to plead special damages. In a broader sense, the appeal requires an examination of the law of defamation in Delaware.

Plaintiff brought suit in Superior Court alleging that he was libeled in an article written by one of the individual defendants, Allison J. Funk, and printed in a magazine published by the corporate defendant, Communications Consultants, Inc. The Court granted defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, and plaintiff appeals. We reverse.

I

The complaint alleges libel but it is judged by the norm applied to such a pleading in every case, and that is fixed by settled Delaware law.

■ For the purpose of judging a motion to dismiss a complaint for failure to state a claim, made pursuant to *Superior Court Civil Rule* 12(b)(6), all well-pleaded allegations must be accepted as true. *Laventhol, Krekstein, Horwath & Horwath v. Tuckman*, Del.Supr., 372 A.2d 168 (1976). The test for sufficiency is a broad one, that is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint. *Klein v. Sunbeam Corp.*, Del.Supr., 8 Terry 526, 94 A.2d 385 (1952). If he may recover, the motion must be denied. With those principles in mind, we look to the pleading in issue, the complaint, for the pertinent facts.

It appears that Funk initiated a telephone interview with plaintiff, who was the Chief of Police of the City of Dover, to obtain material for use in an article which Funk was writing about prostitution in Delaware. Funk's article on the subject was published thereafter in the February 1975 edition of a magazine owned and published by Communications Consultants and known as *Opinion Delaware*. The article contained the following statement, attributing to plaintiff certain views on the subject of prostitution in Dover:

" . . . In Dover, according to Chief William L. Spence, 'prostitution is practically nonexistent.' 'There's an overabundance of it free from personnel at the airbase, from some wives and daughters of airmen who are overseas for long periods and some girls from college in Dover who provide plenty of it. Prostitution has never really been a problem,' said Chief Spence in a recent interview and it was apparent from his tone of voice and slightly defensive posture that he did not want the press to make it into one."

Plaintiff alleges that the statement is an incorrect quotation, and is defamatory. He says that as a result of the article and the statements attributed to him, respectable residents of the Dover area have demanded that he be removed as Chief of Police, the Commander of the Dover Air Base has sug-

gested that he be relieved of his office, the relations between the City and the Base have been impaired, and he has been ostracized and subjected to hatred, ridicule and contempt by a considerable and respectable class of citizens in his community. And he alleges that publication of the statements was done with actual malice in that defendants recklessly disregarded whether the statements were actually made by him.

Relying upon an unreported Superior Court opinion in *Dougherty v. Nelson,* Del. Super., 1440 C.A.1975 (May 13, 1976), the Trial Court determined that the writing was not libelous *per se* and not actionable without proof of special damages. Finding that special damages were not alleged, the Court granted a motion to dismiss the complaint.

Plaintiff contends that the Superior Court erred in two respects: First, he says that there is no need to refer to extrinsic facts to determine that the statement tends to disgrace him or to subject him to ridicule and contempt; consequently, the statement need not fit into one of the four categories of libel *per se* discussed in *Dougherty.*[1] Second, assuming the need for reference to extrinsic facts, the statement does fit into one of the four categories, namely, it maligns him in a business, trade or profession. Under either of these premises, plaintiff asserts that he is not required to plead special damages.

Defendants rely on *Dougherty.* They contend that to be actionable in the absence of special damages, a statement must either be defamatory on its face (that is, without reference to extrinsic facts), or must fit into one of the four categories of libel *per se.* They deny that the statement in question is defamatory on its face and they say that it is not within any of the prohibited categories. Indeed, defendants argue that the statement is not defamatory at all.

## II ·

The law of defamation is a reflection of society's attempt to accommodate two important but often conflicting policies: on one hand, the policy of protecting a person in the enjoyment of his good name and reputation and, on the other, the policy of encouraging freedom of expression. See, *Short v. News-Journal Co.,* Del.Supr., 212 A.2d 718 (1965).

In this general context, "defamation" is, according to *Prosser*:

" . . . that which tends to injure 'reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory or unpleasant feelings or opinions against him."

Prosser *Law of Torts* (1971) § 111 p. 739. The Restatement of the Law *Torts* § 559 has adopted a similar but somewhat shorter definition:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

The Courts have long struggled to accommodate the right to express one's views *vis-a-vis* the right of another not to be damaged by that expression. The results have not always been consistent nor logical —indeed, arbitrary pleading and proof requirements have been the norm in the law of defamation. But to these guideposts we must now turn for guidance in judging the sufficiency of the complaint.

---

1. In *Dougherty,* the Superior Court stated:

"The law of libel in Delaware with regard to [the] specific issue in this case is clear. If the publication is defamatory per se, no special damages (i. e., showing of specific monetary injury) need be pleaded or proved. If, however, the libel is not clear on its face and the publication can be shown to be libelous only upon offering of extrinsic facts, the action will lie only if there are special damages. Thus, for this action to go forward, special damages must have been alleged unless one of four special categories of libel per se are included in the allegations of the pleadings. An action can be maintained without a showing of special damages only if there is an imputation of 1) a crime, or 2) a loathsome disease, or 3) specific misdoing affecting the complainant's business, trade or profession, or 4) unchastity. In general, see Prosser, *Law of Torts,* (4th Ed., 1971), Sec. 112."

■ As *Prosser* states, defamation consists of the "twin torts" of libel and slander. That may be somewhat misleading because, although they may be twins, they are not identical. In shortest terms, libel is written defamation and slander is oral defamation. The two have vastly different historical bases and have been treated differently by the common law courts but, in general, the scope of liability is greater for libel, and the pleading requirements for libel are less strict. For an extended discussion of the difference between libel and slander and the reasons therefor, see *Prosser, supra,* §§ 111, 112.

### A.

■ Preliminarily, we note that, for pleading purposes, slander is treated the same way by almost all American jurisdictions. Briefly, the general rule is that oral defamation is not actionable without special damages. 50 *Am.Jur.*2d Libel and Slander §§ 9, 10; 53 *C.J.S.* Libel and Slander § 170; *Prosser, supra,* § 112, p. 754. But there are four categories of defamation, commonly called slander *per se,* which are actionable without proof of special damages. In broad terms, these are statements which: (1) malign one in a trade, business or profession, (2) impute a crime, (3) imply that one has a loathsome disease, or (4) impute unchastity to a woman: *Prosser, supra,* § 112, pp. 754–760; *Restatement, supra,* § 570.

The precise reason why the law presumes damages in these four categories is unclear, but each seems to involve circumstances to which it would be difficult to trace specific financial loss. Cf. 50 *Am.Jur.*2d, *supra,* § 9. And the unifying characteristic of the categories is the tendency of the slander to isolate the object of the defamation from society. One who is defamed in one of these ways might never know the extent of a lost opportunity to relate to and associate with others, because he could be avoided without knowing the reason and without having a chance to rebut the defamation.

The statement alleged in the case at bar (printed words published in a magazine) falls within the traditional ambit of libel, not slander, so we must now consider the law governing that tort.

### B.

■ As we have observed, the scope of liability for libel is generally broader than for slander. This is to say, that while all slanderous statements would be libelous if written, not all libelous statements would be slanderous if spoken. See *Rice v. Simmons,* Del.Ct. of Err. and Apps., 2 Harr. 417, 422 (1836). This general rule of greater liability is almost universally followed.

In *Rice,* the Court noted three significant reasons why the protection against libel is usually broader than it is against slander: (1) the written word leaves a more permanent blot on one's reputation; (2) the written word is capable of wider circulation than that which is communicated orally; (3) reducing a defamation to writing evidences greater deliberation and intention on the part of one who records it. While that analysis was made long ago by our highest Court, it remains generally valid today.[2] 53 *C.J.S., supra,* § 8.

■ The general rule is that any publication which is libelous on its face is actionable without pleading or proof of special damages. That is a basic way in which libel differs from slander. See 50 *Am.Jur.*2d, *supra,* § 11; 53 *C.J.S., supra,* § 239; *Prosser, supra,* § 112, p. 762; *Restatement, supra,* § 569. In other words, proof of damage proximately caused by a publication deemed to be libelous need not be shown in order for a defamed plaintiff to recover nominal *or* compensatory damages. There is some disagreement among courts in other jurisdictions when the libel is not clear on the face of the writing, that is, when it is necessary to consider extrinsic facts to establish the libel. (Defamation in that cir-

---

2. In saying this, we refer to the traditional differences between that which is spoken and that which is written; we do not consider symbolic speech nor the relatively new methods of communication such as radio and television, moving pictures, and so on. See the discussion of these in *Prosser, supra,* § 112, p. 753.

cumstance is known as "libel per quod"). But even in that situation, proof of special damage is not required if the alleged defamation fits into one of the special categories referred to above. See *Prosser, supra,* § 112. For present purposes, we find it unnecessary to consider this distinction because, as indicated hereinafter, the publication alleged in the complaint fits into one of the special categories, i. e., a defamatory imputation regarding plaintiff's "profession" or "office."

### C.

■ But whatever the law may be in other jurisdictions, Delaware law does not distinguish between libel *per se* and libel *per quod.* Under our law, any libel (that is, a written publication which defames plaintiff) is actionable without special damages, whether the defamatory nature is apparent on the face of the statement or only by reference to extrinsic facts.

A careful review of all the reported Delaware cases shows our long adherence to that rule. The seminal case is *Rice v. Simmons, supra,* decided more than one hundred forty years ago, and to which we have already referred. In that case, plaintiff sued for libel, claiming that defendant had published a writing suggesting that plaintiff had been involved in dishonest conduct. The Court held the writing to be libelous. In doing so, Judge Harrington, speaking for the Court of Error and Appeals, sitting *en banc,* wrote this:

"On the whole, I regard it as a principle of the common law . . . that written slander to be actionable, must impute something which tends to disgrace a man, lower him in, or exclude him from society, or bring him into contempt or ridicule; and that the court must be able to say from the publication itself, *or such explanations as it may admit of,* that it does contain such an imputation, and has legally such a tendency . . . .

*It is not intended by this, that to make a publication libellous it must contain a direct and open charge*; nor can this principle be used as a protection to covert

and insidious slander. The publication must be judged by its ordinary tenor; and *if, taking the terms in their ordinary acceptation, it contains a degrading imputation, however indirectly, it is a libel."* (Emphasis added.)

*2 Harr.* 417, 429.

The rule of *Rice v. Simmons* was reiterated and reaffirmed by this Court in *Klein v. Sunbeam Corp., supra.* In *Klein,* a retail store operator, sued a large manufacturer for a written statement sent to all its distributors and which, plaintiff alleged, was false and defamatory of him. Defendant moved for and obtained a dismissal for failure to state a claim upon which relief can be granted on the ground that the statement did not libel plaintiff. The Trial Court granted the motion to dismiss, relying on *Zanker v. Lackey,* Del.Super., 2 W.W.Harr. 588, 128 A. 373 (1925).

On appeal, this Court reversed, finding the Trial Court's decision mistaken and the *Zanker* opinion "erroneous in law." 94 *A.*2d at 391. (But the Court did say that *Zanker* may have been limited to a procedural point that had been superseded by the enactment of new Superior Court rules, and thus was of little precedential value.)

In *Klein,* the Court briefly and succinctly stated our law of defamation; thus:

"Written defamation will be actionable, if it imputes something which tends to disgrace a man, lower him in, or exclude him from, society, or bring him into contempt or ridicule. The publication before the court in *Rice v. Simmons* was held to be libelous *per se* because it represented the plaintiff as 'a dishonorable, if not a dishonest, man' and because it contained a derogatory imputation to his 'reputation and standing'."

94 *A.*2d at 390. *Reardon v. News-Journal Company,* Del.Supr., 3 Storey 29, 164 A.2d 263 (1960).

The Court then reaffirmed the rule of *Rice* which places Delaware with those states which permit the libel to be actionable if supported by extrinsic facts. The significant fact on this issue is that *Klein*

had *not* been named or positively identified in the writing under scrutiny. And on this key issue, the Court said:

"Under the rules announced in *Rice v. Simmons,* it is not necessary that the individual defamed in writing need be positively identified in the defamatory language itself, for it seems clear that defamatory language may be made applicable to the plaintiff by extraneous evidence showing that the plaintiff was intended to be referred to by the maker and was understood to be referred to by the reader."

And the Court concluded:

"The complaint in the instant case sets forth as an exhibit the exact language allegedly libelous. It states that the language was intended to refer to the defendant and was understood by the recipients of the letter as referring to the defendant. Conceivably, the proof might well show this to be the fact and if such is the fact, a cause of action would be made out justifying judgment for the plaintiff, if the language of the letter is libelous. Certainly, the complaint gives fair notice to the defendant of the general nature of the cause of action asserted against it."

94 *A.*2d at 391.

In sum, *Klein* reaffirmed that in Delaware a libelous statement is actionable *per se* and it is no less so if the plaintiff must refer to extrinsic facts to show the relationship between the statement and himself.[3]

■ We think that *Rice v. Simmons* has more than age to commend it. It embodies long settled law in this State, reaffirmed by this Court in *Klein,* and its reasoning remains sound. Once it is accepted that the scope of liability for libel (without special damage) is different and greater than for

slander, and that is true even in the majority of jurisdictions, we think the better rule does not distinguish between indirect and direct, or incomplete and complete libels, so long as the defamation is susceptible of proof. In this regard, we find the words of Judge Harrington in *Rice v. Simmons* most helpful:

"I am aware also, that it may be said that this is making out a libel by argument or inference; but it must be remembered, that though the law requires the imputation of something that will dishonor or degrade a man, or lessen his standing in society, it does not require that such imputation should be in express terms, nor does it afford any countenance or refuge for covert and insidious slander. If it did so, it would extend but little protection to reputation. The character of a libel is to be judged of by the effect it produces on the mind; it does not always happen; and, when the slanderer writes in the fear of the law, it will not often happen; that you can at once put your finger on the libelous matter, and the attempt to show in what it consists may depend much on inferential reasoning; while yet the impression may be distinct on the mind of every reader, and all the damage result to character that would arise from a plain and direct charge."

2 *Harr.* 417, 433.

We recognize that some of the Trial Court opinions may be confusing, but this Court has never departed from or diluted the ruling of *Rice v. Simmons.* It is the law in Delaware and any decision to the contrary is expressly overruled.[4]

### III

■ We are of the opinion that the allegedly defamatory matter involved herein

---

3. Extrinsic facts are known in the law of defamation as the "colloquium."

4. In *Klein,* (then) Justice Wolcott, writing for the Court, said this:

"The rules thus announced in *Rice v. Simmons* have consistently been followed and applied by the Delaware courts. Cf. *Layton v. Harris,* 3 Harr. 406; *Todd v. Every Evening*

*Printing Co.,* 6 Penn. 233, 66 A. 97; *Snavely v. Booth,* 6 W.W.Harr. 378, 176 A. 649; *Gordon v. News-Journal Co.,* 6 W.W.Harr. 396, 176 A. 657. Under the circumstances, we think *Rice v. Simmons* is controlling authority in the cause now before us."

94 *A.*2d at 390.

is libelous under the standards announced in *Rice* and *Klein,* and is actionable without proof of special damages. The remark which plaintiff asserts was falsely attributed to him would have been made only by a grossly insensitive person, implying that a substantial number of Dover women were unchaste. By attributing the comment to plaintiff, defendants have allegedly caused him to be ridiculed and scorned by his community, an assertion which for purposes of this appeal we must accept as true. The statement attributes to him a derogatory comment about a large part of the community for whose safety and protection he is responsible in an official capacity and, as such, would tend to damage plaintiff in his office of Chief of Police, which requires the good will and support of the citizens, many of whom he allegedly ridiculed and charged with adultery.

We conclude that the complaint contains allegations sufficient to state a cause of action based on the theory of defamation and, therefore, it was error to grant defendants' motion to dismiss. So viewed, the publication imputes to plaintiff "something which tends to disgrace [or] . . . lower him in" the opinion of the Dover community. *Klein v. Sunbeam Corp.,* 94 A.2d at 390.

In any event, the alleged defamatory matter imputes to plaintiff a characteristic or view "incompatible with the exercise of [his] . . . profession, or office," 50

*Am.Jur.2d, supra,* § 10, and is actionable because it falls within one of the four specialized categories.

\* \* \* \* \* \*

As we have indicated, the Trial Judge relied on *Dougherty v. Nelson, supra,* in which the Court granted a motion to dismiss for failure to state a claim on which relief can be granted on the ground that special damages had not been pleaded in a case wherein they were required. That case stands on its own facts but, to the extent any statement of the law of libel by the Superior Court is inconsistent with that stated herein, it is overruled.[5]

Finally, we emphasize that we consider here only a complaint alleging libel. We are not reviewing the standards of proof nor any claim of privilege or other defense. As to those, see, for example, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Curtis Publishing v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *News-Journal Company v. Gallagher,* Del.Supr., 233 A.2d 166 (1967); and *Ross v. News-Journal Company,* Del.Supr., 228 A.2d 531 (1967).

Reversed and remanded for proceedings consistent herewith.

---

5. By order, this Court affirmed the decision, *Dougherty v. Nelson,* 374 A.2d 839 (1977), determining that the issue presented to us on appeal was controlled by settled law.