**In re the Matter of Julie CREWS, Petitioner,**

v.

**STATE of Delaware, Respondent.**

**No. 1105024422.**

Family Court of Delaware, Sussex County.

Submitted: July 22, 2011.

Decided: Sept. 26, 2011.

---

Carole Dunn, Esquire, Delaware Office of the Public Defender, Georgetown, DE, Attorney for Julie Crews.

Kathleen Geiszler, Esquire, Delaware Department of Justice, Georgetown, DE, Deputy Attorney General for the State of Delaware.

## OPINION

HENRIKSEN, J.

Pending before the Court is a Request for Review of a Commissioner's Order filed by Julie Crews[1] ("Petitioner") on July 22, 2011. The State of Delaware ("State") did not file a response. Simultaneous with the filing of her appeal, Petitioner filed a Motion to Stay Execution of Commissioner's Order and Sentence. The following represents the Order of the Court on both filings.

### Facts and Background

On May 28, 2011, Petitioner was charged with two counts of text message related Harassment, a Class A Misdemeanor.[2] On July 15, 2011, trial on the harassment charges was held before a Commissioner of this Court. At the hearing, the Court heard testimony from several individuals, including Petitioner's ex-husband, Douglas Crews "(Petitioner's ex-husband" or "ex-husband") and the parties' sixteen (16)

---

1. Pseudonyms have been substituted for the names of the parties and for all identifying information, such as place of employment and residence, pursuant to Supreme Court Rule 7(d).

2. DEL.CODE ANN. tit. 11, § 1311 (2008). Specifically, Petitioner was charged with violating subsection (a)(2), which provides:

(a) A person is guilty of harassment when, with intent to harass, annoy or alarm another person:
(2) Communicates with a person by telephone, telegraph, mail or any other form of written or electronic communication in a manner which the person knows is likely to cause annoyance or alarm including, but not limited to, intrastate telephone calls initiated by vendors for the purpose of selling goods or services.

year old minor child, Kevin ("Son"). Petitioner's ex-husband testified that Petitioner sent him two text messages on May 27, 2011.[3] Each separate text message forms the basis of one of the two counts of harassment. The first text message reads as follows:

> **Text Message 1:** You need to pick the kids up at Hope's, I work a double, try to keep your whore away from them. This is—that is a skanky b**** that will f*** with someone's child five feet away. She will get hers, she will get hers for disrespecting my son like that, and you should f****** know better. Don't let it happen again or we will be in a visitation center again. Not that you care, but Kevin saw that b***** naked when he went to the bathroom. What the f*** is wrong with you?[4]

Petitioner does not dispute she sent the aforementioned text message to her ex-husband. However, Petitioner testified this text message was sent to her ex-husband because of an incident that had occurred while their 16 year old son was in his custody. Although Petitioner testified to the particular incident, Son testified as well. Specifically, Son testified he was awoken in the middle of the night by his father having sexual intercourse with his girlfriend. On direct examination by Assistant Public Defender Carole Dunn, Son testified, in pertinent part, as follows:

> Q. Kevin, did something happen in that camper that caused you to leave the camper or that caused you to argue with your dad or that caused you some real concern?

> A. It didn't cause me concern, it bothered me a lot, though, but yes.

> Q. Okay. What bothered you a lot?

> A. I was probably not even 10′ away from him and he was having sex in the other room rocking the whole camper, and he swore on my life he wouldn't do that, so—.[5]

Petitioner claimed that she sent the first text message in response to this incident. She testified at the hearing, in pertinent part, as follows:

> Q. Okay. Now while you were married—let's first of all talk about the situation on May 27 and events immediately preceding.

> A. Okay.

> Q. Did you receive a call from Douglas and/or Kevin?

> A. I received a call from Douglas at 6:15 that morning from Kevin's telephone because he had taken Kevin's telephone. Kevin had run off at 5:00 a.m. that morning. Douglas called me at 6:15 to tell me that Kevin had run off. I went looking for Kevin because I knew he was on a bicycle on a back road and he couldn't be too far. After I—

> Q. Where were you living at this time?

> A. On Ruffin Road.

> Q. Um-hum.

> A. And he was on Ruffin Road, so we were only about two miles from living from each other.

> Q. Okay.

> A. And I picked Kevin up and that is when I sent my first text message.

**3.** The Court notes there was testimony concerning a phone call Petitioner made to her ex-husband. However, Petitioner was charged with only two counts of harassment, which charges were based on text messages. Therefore, for purposes of this appeal, the Court does not find it relevant to discuss the alleged telephone call.

**4.** July 15, 2011 Transcript at 11 (hereinafter referred to as Transcript). Where appropriate, the Court censored several of the words throughout the text messages.

**5.** *Id.* at 35.

These text messages were sent the day that this occurred with Kevin. I was angry, I used very poor language, I admit it.

Q. Okay. And why were you angry?

A. Because Douglas, himself had called me and admitted that he had done something that he probably shouldn't have, which was have sex with Kevin there. And then Kevin later told me that the door wasn't shut and that he saw the girl topless, which and we're talking about a 25' camper. And my younger children were not there, like he stated. My younger children were with me. When I got Kevin and Kevin gave me the rest of the story, I sent Douglas that text message, you know. Saying, telling him he should know better and yes, I admitted I used bad language, I was angry.[6]

On direct examination, Petitioner's ex-husband testified to the second text message that was sent to him by Petitioner. In its entirety, that text message is as follows:

> Text Message 2: This is the message your skanky b**** left me, you better not have that trash around my kids or I will make things real ugly. And tell that c*** I said let me know and when and where and I will whip her f****** ass. She has my number.[7]

Once again, Petitioner did not dispute she sent the second text message to her ex-husband. However, Petitioner testified it was sent in response to a telephone message she received from her ex-husband's girlfriend. Other than Petitioner's testimony that the girlfriend left her a telephone message, no evidence concerning the substance of that message was submitted to the Court.

Immediately following the trial, the Commissioner found the Petitioner guilty on both counts of harassment and ordered she pay fines and court costs and fees.

On July 22, 2011, Petitioner timely filed a Request for Review of Commissioner's Order. In addition, Petitioner, simultaneous with the filing of her Request for Review of Commissioner's Order, filed a Motion to Stay Execution of Commissioner's Order and Sentence.

### Review of Commissioner's Order

The *Delaware Code* confers upon this Court appellate jurisdiction over a Commissioner's Order. Specifically, the Code provides that, "[a]ny party, except a party in default of appearance before a Commissioner, may appeal a final order of a Commissioner to a judge of the Court."[8] A Commissioner's Order may be appealed to a judge of the Court within thirty days by filing written objections that set forth with particularity the basis of each objection of the Commissioner's Order.[9] From an appeal of a Commissioner's Order, this Court must make a *de novo* determination based on the record below, but the Court is not required to accept any additional evidence offered by the appealing party.[10] The Court may only accept such evidence after finding "it is newly discovered evidence which by due diligence could not have been discovered in time to offer it before ... the commissioner's order or ... the circumstances are such as would justify reopening the record in the interest of jus-

6. *Id.* at 48–9.

7. *Id.* at 12.

8. DEL.CODE ANN. tit. 10, § 915(d)(1) (1999).

9. DEL.FAM. CT. CIV. R. 53.1(b).

10. DEL.FAM. CT. CIV. R. 53.1(e).

tice."[11] The Court deciding an appeal from a Commissioner's Order "may accept, reject or modify, in whole or in part, the commissioner's order."[12]

### Harassment

Petitioner was charged with violating Title 11, Section 1311(a)(2) of the *Delaware Code*, which provides:

(a) A person is guilty of harassment when, with intent to harass, annoy or alarm another person:

(2) Communicates with a person by telephone, telegraph, mail or any other form of written or electronic communication in a manner which the person knows is likely to cause annoyance or alarm including, but not limited to, intrastate telephone calls initiated by vendors for the purpose of selling goods or services.

### Findings and Conclusion

■ After a review of the record, the Court cannot stray from the undisputed fact Petitioner sent two text messages to her ex-husband using, what would be considered by most, offensive language. Notwithstanding the offensiveness of the language, the Court must determine whether the Commissioner correctly found Petitioner guilty of two counts of harassment.

In order to be found guilty of harassment, the Court must make a finding the defendant "acted with *intent to harass, annoy or alarm*."[13] However, the relevant statute does not define the words harass, annoy, or alarm. Title 1, Section 303 of the *Delaware Code* provides "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the English language."[14] Since the General Assembly did not define the terms harass, annoy, or alarm, the Court will utilize the dictionary definitions of these terms.

According to Black's Law Dictionary, harassment is defined as "[w]ords, conduct, or action *(usu. repeated or persistent)* that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose."[15] Moreover, the Merriam–Webster Online Dictionary defines harass as "to annoy *persistently*,"[16] annoy as "to disturb or irritate especially by *repeated acts*,"[17] and alarm as the "sudden sharp apprehension and fear resulting from the perception of imminent danger."[18]

In the current matter, the Commissioner determined the Petitioner sent the two text messages for no other reason than to annoy or alarm her ex-husband, and Petitioner knew the messages were likely to

---

11. *Id.*

12. Del.Fam. Ct. Civ. R. 53.1(f).

13. Del.Code Ann tit. 11, § 1311(a) (emphasis added). *See also Burnham v. State*, 761 A.2d 830, 832 (Del.2000) ("Harassment requires a finding that [the defendant] acted with intent to harass, annoy, or alarm.").

14. Del.Code Ann. tit. 1, § 303 (1953).

15. Black's Law Dictionary (9th ed. 2009) (emphasis added).

16. Merriam–Webster, http://www.merriam-webster.com/dictionary/harass (last visited Aug. 19, 2011) (emphasis added).

17. Merriam–Webster, http://www.merriam-webster.com/dictionary/annoy (last visited Aug. 19, 2011).

18. Merriam–Webster, http://www.merriam-webster.com/dictionary/alarm (last visited Aug. 19, 2011).

serve that purpose.[19]

However, despite the Commissioner's finding of guilt on both counts, the Court cannot conclude Petitioner sent the messages with the requisite intent to harass, annoy or alarm. In making this determination, it is imperative to consider the surrounding circumstances that precipitated Petitioner's decision to send the messages, which was her distress over learning from her son her ex-husband had engaged in sexual intercourse with his girlfriend while his 16 year old son was asleep in close proximity. The Court finds this incident was the driving force behind Petitioner's decision to send the text messages. Instead of sending the messages with the intent to harass, annoy or alarm her ex-husband, the Petitioner sent the messages because of her concern for the welfare of her child and because of her anger with her ex-husband's decision to engage in sexual intercourse in close proximity to their son. Because of this finding, the Court finds Petitioner lacked the requisite intent to be found guilty of harassment.

■ Moreover, as another Judge of this Court has recognized, this Court is troubled by the broad wording of the harassment statute "that could find any person guilty of harassment simply because in a written or electronic communication, another person feels annoyed."[20] The text messages sent by Petitioner in this matter are offensive. Moreover, Petitioner could have handled the situation in a better manner. Nevertheless, and although the harassment statute does not specifically provide an individual charged with harassment must act in a harassing, annoying, or alarming manner a certain number of times, this Court finds the sending of two text messages, without a request by the receiver of those messages to "stop," fails to rise to the level of harassment. This finding is supported by the dictionary definitions of the terms harass and annoy, which the General Assembly neglected to define in the harassment statute, but which terms share a common attribute: repetitiveness. As stated above, harass is defined as "to annoy *persistently*,"[21] and annoy is defined as "to disturb or irritate especially *by repeated acts*."[22] The sending of two text messages can hardly be considered persistent or repeated acts. Moreover, any annoyance, if any, caused to Petitioner's ex-husband "was so *de minimis* that the General Assembly could not have reasonably intended to criminalize such behavior."[23]

Although reasonable minds might differ over the offensiveness and/or harassing nature of the text messages sent by Petitioner to her ex-husband, the Court finds there is reasonable doubt as to whether such messages constitute the crime of harassment. In reaching this determination, the Court notes the second message raises more concern than the first. However, the second message also does not rise to the level necessary to constitute harassment. Although separate from the first message, both messages relate to Petitioner's disapproval of her ex-husband's

19. Transcript at 62.

20. *State v. Hatfield*, No. 0503005452 (Del. Fam.Ct. Sept. 15, 2005) (Crowell, J.) (internal quotations omitted).

21. Merriam–Webster, http://www.merriam-webster.com/dictionary/harass (last visited Aug. 19, 2011) (emphasis added).

22. Merriam–Webster, http://www.merriam-webster.com/dictionary/annoy (last visited Aug. 19, 2011) (emphasis added).

23. *Hatfield*, No. 0503005452.

decision to engage in sexual intercourse with their teenage son in close proximity. Moreover, the words used by Petitioner in the second text message, again offensive, are not fighting words. As Judge Trader stated in *State v. Cooper*, "[f]ighting words are words that have a direct tendency to incite violence from the person to whom the remark is individually addressed." [24]

In the current case, although the second message was sent by Petitioner to her ex-husband, the contents of the message were directed towards the girlfriend. Although the message may have upset Petitioner's ex-husband, the Court finds it unlikely the message sent by Petitioner to her ex-husband about his girlfriend would have a direct tendency to incite violence from Petitioner's ex-husband. Had the message been sent directly to the girlfriend, the Court would be confronted with a different question, especially if there were more than one message of a similar nature sent electronically to the girlfriend. However, that is not the issue currently pending before the Court, and therefore, based on the definitions of harass, annoy, alarm, and fighting words, the Court does not find either message to amount to the crime of harassment.

After a review of the record, the Court cannot conclude that Petitioner sent the messages with the requisite intent to harass, annoy or alarm. Moreover, the Court cannot find that the sending of the two text messages, without more, to be conduct sufficient to constitute harassment. Therefore, the Court rejects the Commissioner's Order and Petitioner's conviction of guilt is hereby reversed and vacated. Because it is the Order of the Court that Petitioner's conviction be reversed and vacated, her Motion to Stay Execution of Commissioner's Order and Sentence is dismissed as moot.

**IT IS SO ORDERED** this 26th day of September, 2011.

---

**24.** *State v. Cooper*, 2004 WL 3312525, at *1 (Del.Com.Pl. Sept. 28, 2004) (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942)).