IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ANDREA C. BECK,

            Plaintiff,

    v.

JOHN GREIM, JEFFREY HORVAT,
AMY RETZLAFF, PETER RETZLAFF,
and ANNA MARIE HANNA,

            Defendants.

              C.A. No. K16C-12-001 WLW

Submitted: September 27, 2019
Decided: October 22, 2019

**ORDER**

Upon Defendants' Rule 50(a) Motion for Directed Verdict
*Granted.*

Andrea C. Beck, Plaintiff, *pro se*

Brian T. McNelis, Esquire of Young & McNelis, Dover, Delaware; attorney for Defendants.

WITHAM, R.J.

This bench trial resulted from an ongoing dispute between the Plaintiff, Andrea C. Beck ("Ms. Beck"), and Defendants John Greim, Jeffrey Horvat, Amy Retzlaff, Peter Retzlaff and Anna Marie Hanna ("the Defendants"), directors and officers of the homeowners association of Bombay Woods Maintenance Corporation.[1]

At the conclusion of Ms. Beck's case, the Defendants renewed their motion, pursuant to Superior Court Rule 50, for a directed verdict on three grounds. First, Ms. Beck failed to proffer any evidence that any statements or actions by the Defendants took place after the Court's determination of a statute of limitations deadline of November 30, 2014. Second, that Ms. Beck has not proffered any evidence that any documents in question were published to a third party. Third, that no evidence has been presented as to actual damages.

Ms. Beck generally argues that evidence has been presented by way of documents of the Bombay Woods Maintenance Corporation designed for the corporation website before November 30, 2014 and thereafter by way of republication. She argues that the slanderous activities of the Defendants began before November of 2014 and that she was not aware of some of the actions of the Defendants prior to discovery in this case. No evidence has been presented that any of the activities of the Defendants were libel or slander *per se*.

## STANDARD OF REVIEW

1. Rule 50(a) Judgment as a Matter of Law provides:

(1) If during a trial by jury a party has been fully heard on an issue and there is

---

[1] Peter Retzlaff was dismissed from these proceedings by agreement on September 17, 2019.

*no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue*, the Court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.[2]

When the Court determines that, under the facts presented, no reasonable juror could find in favor of the plaintiff, the Court should grant the motion.

## DISCUSSION

2. A defamation claim consists of two possible torts – libel (written) and slander (spoken).[3] The Elements of defamation are:

> 1) defamatory language
>
> 2) concerning the plaintiff
>
> 3) published to a third person
>
> 4) that causes damages to the plaintiff's reputation.[4]

The damages for defamation are generally presumed if the deformation is libel.[5] The

---

[2] Super. Ct. Civ. R. 50(a)(1)-(2).

[3] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).

[4] *Naples v. New Castle County*, No. N11C–06–242 PRW, 2015 WL 1478206 at * 12 (Del. Super. March 30, 2015).

[5] *See Id.* at *12; *Spence*, 396 A.2d at 971.

damages are also presumed if the defamation is slander AND it falls within *per se* categories (I. business or profession; ii. loathsome disease; iii. crime of moral turpitude; iv. disparaging statements regarding sexual activities); otherwise damages must be proven.[6] One of the complete defenses to defamation is truth.[7] Another defense to defamation is the statute of limitations, which is two years in Delaware.[8] Defamation claims accrue on the date the alleged defamatory statement is communicated to a third party.[9]

3. In considering the evidence, this Court considered whether the evidence presented a case for common law harassment as well. Harassment elements are:

1) alarming or distressing conduct

2) with the intent to harass, annoy or alarm; and

3) the knowledge that the communication was likely to cause annoyance or alarm.[10]

---

[6] *Naples,* 2015 WL 1478206 at *12.

[7] In Delaware, it is sufficient that the statements are "substantially true." *Ramunno v. Cawley,* 705 A.2d 1029, 1035 (Del. 1998).

[8] 10 Del. C. § 8119; *Naples,* 2015 WL 1478206 at *11.

[9] *Naples,* 2015 WL 1478206 at *11.

[10] *State v. Price,* No.10120137412011, 2011 WL 13175135 (Del. Com. Pl. 2011); *see also* 11 *Del. C.* § 1311(a) A person is guilty of harassment when, with intent to harass, annoy or alarm another person: (1) That person insults, taunts or challenges another person or engages in any other course of alarming or distressing conduct which serves no legitimate purpose and is in a manner which the person knows is likely to provoke a violent or disorderly response or cause a reasonable person to suffer fear, alarm, or distress; (2) Communicates with a person by telephone, telegraph, mail or any other form of written or electronic communication in a manner which the person knows

The statute of limitations for harassment is also two years in Delaware.[11]

4. In this case, Ms. Beck failed to satisfy the elements of either defamation or harassment. Therefore, no legally sufficient evidentiary basis exists for Ms. Beck to be able to recover. Throughout the course of this case, Ms. Beck presented numerous exhibits to the Court. The statute of limitations in this case barred all evidence predating November 30, 2014.[12] Unfortunately for Ms. Beck, most of these exhibits were barred by the two year statute of limitations. Some of the inadmissible exhibits may have contained defamatory language. However, even if they did, which was not established, the Court could not consider them as a part of this case.

5. The only exhibits Ms. Beck introduced that were admitted into evidence either did not contain defamatory language or were not published, as required by Delaware law to establish defamation. Some of the evidence Ms. Beck produced represented internal board documents. No evidence was produced by Ms. Beck to indicate that those internal board documents were distributed to anyone except the board members,

---

is likely to cause annoyance or alarm including, but not limited to, intrastate telephone calls initiated by vendors for the purpose of selling goods or services; (3) Knowingly permits any telephone under that person's control to be used for a purpose prohibited by this section; (4) In the course of a telephone call that person uses obscene language or language suggesting that the recipient of the call engage with that person or another person in sexual relations of any sort, knowing that the person is thereby likely to cause annoyance or alarm to the recipient of the call; or (5) Makes repeated or anonymous telephone calls to another person whether or not conversation ensues, knowing that person is thereby likely to cause annoyance or alarm; (b) Harassment is a class A misdemeanor.

[11] *See Lankford v. Scala,* No. 94C-04-023, 1995 WL 156220 at *5 (Del. Super. Feb. 28, 1995) (discussing the fact that two-year statute of limitations statute applies to all personal injuries, including non-physical personal injuries).

[12] Both parties agree on this date.

5

who all were named as Defendants in this case. Therefore, no proof exists for the Court to conclude that these documents were ever published by Defendants to a third party. Ms. Beck also did not present any witnesses to testify that they heard Defendants talking about Ms. Beck in a manner that could constitute defamation. There was no testimony offered to establish that a person's opinion of Ms. Beck changed as a result of any defamatory statements or publications.

6. Ms. Beck claimed that some of the documents barred by the statute of limitations were published on the community website and Facebook page within the time period not barred by the statute. Ms. Beck is correct that such action by Defendants could potentially constitute a "continuing wrong," which could toll the statute of limitations.[13] Ms. Beck also claims that some of the letters containing potentially defamatory language have been redistributed throughout the community she lives in during the period not barred by the statute of limitations. However, Ms. Beck failed to produce any witnesses or to establish otherwise that these statements were, in fact, republished to any third party.

7. Ms. Beck testified herself that she saw these statements published on-line and received older letters containing potentially defamatory language after November 30, 2014. However, to establish defamation in Delaware, a plaintiff must demonstrate that the defamatory language was published to a third party, not the plaintiff herself. Even if Ms. Beck did see the statements on-line and received letters containing defamatory language, she still would not have been able to meet the elements of her case if she

---

[13] *See Abbot v. Gordon*, No. 04C-09-055 PLA, 2008 WL 821522 at *13 (Del. Super. March 27, 2008).

couldn't demonstrate that somebody else, not named as a defendant in her suit, also saw them. Furthermore, a reasonable person would have to understand these statements to be defamatory (lowering a person in the society) as related to Ms. Beck.[14] Ms. Beck wonders why she has to prove that a third party saw defamatory statements on the website given the fact that the website was available to the community.[15] Ms. Beck fails to acknowledge that, as Plaintiff in this case, she bears the burden of proof of all the elements necessary to establish her claim.

8. In her response to Defendant's Rule 50(a) Motion, Ms. Beck alleges that she did not know about some of the documents otherwise barred by the statute of limitations until discovery.[16] It is true that under the "date of discovery" doctrine "the statute of limitation may be tolled where there are no observable factors that would provide notice to a layman of a problem."[17] But it appears that Ms. Beck was, in fact, aware of the alleged misconduct by the parties prior to the discovery of the documents, which is why she commenced the action against the parties and was seeking discovery in the first place. Nothing indicates that Ms. Beck did not have the ability to bring a case earlier. Ms. Beck also did not present any evidence that a third party read these statements. A third party is necessary to establish that the third party's opinion of the Plaintiff was changed in a negative way to meet the threshold of establishing a claim.

---

[14] *See Spence* 396 A.2d at 971 (Del. 1978).

[15] Plaintiff's Response to Defendant's Rule 50(a) Motion (hereinafter "Pl. Response") at 13.

[16] *Id.* at 4.

[17] *Abbot,* 2008 WL 821522 at *14.

9. Furthermore, Ms. Beck failed to meet all the elements of a harassment claim. Ms. Beck presented no evidence that the Defendants had the intent to harass, annoy or alarm her. Ms. Beck also failed to provide any evidence that would demonstrate that the Defendants knew their actions would annoy or alarm her. Moreover, Delaware courts have been reading the harassment statute narrowly.[18] In *Crews*, the court explained that just because someone feels annoyed by some form of written or electronic communication, does not necessarily mean that they have been harassed.[19] In sum, despite the fact that Ms. Beck had more than enough time to prepare her case, she failed to provide enough evidence for this Court to find that her claims for defamation and harassment had basis. No evidence has been offered to show that Ms. Beck had been damaged by the actions of the Defendants.

## CONCLUSION

For the reasons mentioned above, the Defendants' Motion for Judgment as a Matter of Law is **GRANTED.**

IT IS SO ORDERED.

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

[18] *Crews v. State,* 30 A.3d 120, 125 (Del. Fam. Ct. 2011).

[19] *Id.* at 125.

8