# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

inVENTIV HEALTH CLINICAL, LLC, )
)
    Plaintiff / Counterclaim Defendant, )
)
**v.** )   **C.A. No. N19C-12-033**
)    **PRW  CCLD**
ODONATE THERAPEUTICS, INC., )
)
    Defendant / Counterclaim Plaintiff. )

Submitted:  November 20, 2020
Decided:  January 26, 2021
Corrected:  February 18, 2021

## MEMORANDUM OPINION AND ORDER

*Upon Plaintiff inVentiv Health Clinical, LLC's Motion to Dismiss*
**GRANTED IN PART, DENIED IN PART.**

Jody C. Barillare, Esquire, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Brian W. Shaffer, Esquire, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania; John A. Vassallo, III, Esquire, MORGAN, LEWIS & BOCKIUS LLP, New York, New York, *Attorneys for Plaintiff/Counterclaim Defendant inVentiv Health Clinical, LLC*.

Catherine A. Gaul, Esquire, ASHBY & GEDDES, Wilmington, Delaware; Shireen Barday, Esquire, GIBSON DUNN, New York, New York; Joshua H. Lerner, Esquire, GIBSON DUNN, San Francisco, California, *Attorneys for Defendant/ Counterclaim Plaintiff Odonate Therapeutics, Inc.*

**WALLACE, J.**

This case arises from a dispute between the parties to pharmaceutical drug trial agreements. inVentiv Health Clinical, LLC ("Syneos"[1]), is a privately owned global provider of biopharmaceutical services that includes Contract Research Organization services. Odonate Therapeutics, Inc., is a biotechnology company that focuses on development of therapeutics for cancer patients; it has primarily focused on the development of a drug called tesetaxel, a treatment drug for patients with breast cancer.

Each party, among other counts, alleges that the other breached the several agreements between them. Syneos alleges that Odonate owes it nearly $12 million in unpaid invoices.[2] Odonate alleges that Syneos overbilled for more than $7 million, is not honoring $4.65 million in credits for missed milestones, and that it fraudulently induced the contracts.[3] Before the Court now is Syneos's motion to dismiss Odonate's counterclaims.

Syneos's Motion is **DENIED** as to Counterclaim Count I (breach of contract) and is **GRANTED** as to Counterclaim Counts II and III (breach of the implied covenant of good faith and fair dealing and fraud in the inducement).

---

[1]   In 2018, inVentiv Health rebranded as Syneos Health. In most of the parties' briefing, inVentiv is referred to as Syneos. So the Court uses that new name herein to avoid confusion.

[2]   Pl.'s Compl. at ¶ 1, Dec. 12, 2019 (D.I. 1).

[3]   Def.'s Am. Countercl. at ¶ 1, Mar. 9, 2020 (D.I. 15).

# I. FACTUAL BACKGROUND

In early 2017, Odonate was looking for a contract research organization ("CRO") to provide Phase III clinical drug study and regulatory approval services for its cancer drug study, CONTESSA—a multinational study of the novel therapeutic agent, tesetaxel, for patients with breast cancer.[4] Odonate began discussions with Syneos, during which Syneos made specific representations as to its expertise, ability to hit mutually agreed upon timelines, ability to complete CONTESSA enrollment by February 2019 and to provide continuity of Clinical Research Associates ("CRAs") during the entire study.[5] Based on Syneos's representations of its expertise and capability, the parties entered into a Start-Up Services Agreement ("SUSA") in February 2017 and Odonate formally awarded the management of CONTESSA to Syneos on March 26, 2017.[6] The parties entered into a Master Services Agreement ("MSA") in April 2017.[7] And in May 2017, Syneos announced it was merging with INC Research.[8] By that time, Odonate had already invested a half-million dollars into its deal with Syneos.[9]

---

[4] *Id.* at ¶ 2.

[5] *Id.* at ¶¶ 25, 116.

[6] *Id.* at ¶ 28.

[7] *Id.* at ¶ 29.

[8] *Id.* at ¶ 5.

[9] *Id.*

The parties entered an Individual Project Agreement ("IPA") in August 2017.[10] The IPA specified that Odonate would pay Syneos $29.6 million in exchange for its services to "successfully manage CONTESSA through its completion."[11] The IPA included bonus and penalty incentives for Syneos to complete certain work by objective milestones.[12] The milestones included dates when a number of clinical sites would become activated or when a number of patients had been introduced to the study.[13]

Syneos's merger with INC Research was completed on August 1, 2017.[14] This merger, Odonate believes, severely impacted Syneos's ability to manage CONTESSA.[15] More specifically, the merger allegedly caused Syneos to shift corporate priorities and the allocation of necessary resources away from its duties under the IPA.[16] Due to this shift, Odonate says, Syneos failed to live up to the

---

[10]  *Id.* at ¶ 30.

[11]  *Id.* at ¶ 31.

[12]  *Id.* at ¶ 66.

[13]  *Id.* at ¶ 68.

[14]  *Id.* at ¶ 38.

[15]  *Id.* at ¶ 39.

[16]  *Id.* at ¶¶ 34, 36.

representations of its capacity to successfully manage CONTESSA.[17]  Syneos's alleged deficiencies in its management of CONTESSA caused it to miss every single agreed-upon milestone by an average of 101 days.[18]  Additionally, during this time, CONTESSA experienced a high rate of turnover for its CRAs, despite Syneos's representations of its goal for CRA continuity for the lifetime of the CONTESSA project.[19]

Despite these deficiencies in performance, Odonate tried to work with Syneos to improve its performance from October 2018 to April 2019.[20]  When these attempts failed, Odonate invested in the infrastructure to take over some of the management activities of CONTESSA.[21]  On May 7, 2019, Odonate informed Syneos of this change, and Syneos agreed to create a transition plan in order to minimize disruption to the CONTESSA project.[22]

On May 13, 2019, Syneos suspended its services without providing any transition plan and informed its testing sites that Odonate had taken over full

---

[17]  *Id.* at ¶ 39.

[18]  *Id*. at ¶¶ 67-68.

[19]  *Id*. at ¶ 40.

[20]  *Id.* at ¶ 71.

[21]  *Id.* at ¶ 72.

[22]  *Id.*

responsibility for CONTESSA.[23]  Despite this suspension of service, Syneos continued to send Odonate monthly invoices of $217,717.82 for six months (totaling $1,303,306.92) after the May suspension date.[24]

On November 25, 2019, Odonate exercised its right of early termination under Section 5.2(a) of the MSA.[25]  Upon this termination, Syneos was obligated to account for the number of fully-completed or partially-completed units of work it had performed pursuant to Section 5.3(c)(i) of the MSA and Section 4 of the IPA.[26] Syneos never did so.[27]

As of the November 25 termination date, Syneos had invoiced Odonate approximately $25.5 million.[28]  Odonate's own calculation, based on the amount of units of work recorded, suggested that Syneos had performed approximately $18.4 million of services, and thus overbilled $7.1 million.[29]  Further, according to

---

[23]  *Id.* at ¶¶ 73-74.

[24]  *Id.* at ¶ 88.

[25]  *Id.* at ¶ 59.

[26]  *Id.*

[27]  *Id.*

[28]  *Id.* at ¶ 42.

[29]  *Id.* ¶¶ 43, 46-47.

Odonate, Syneos's missed milestones resulted in payment penalties worth $4.65 million.[30]

## II. PARTIES' CONTENTIONS

### A. SYNEOS'S COMPLAINT

In December 2019, Syneos filed its Complaint against Odonate for breach of contract, equitable estoppel, promissory estoppel, and unjust enrichment.[31] It alleges Odonate refused payment required by a number of different contractual provisions of the MSA and IPA, amounting to at least $12 million in compensatory and other damages for monthly fees, milestones, compensable expenses, and late fees.[32]

### B. ODONATE'S COUNTERCLAIMS

In its answer, Odonate filed counterclaims against Syneos for breach of contract, breach of implied covenant of good faith and fair dealing, and fraud in the inducement.[33] In Counterclaim Count I, Odonate asserts that Syneos breached the MSA and IPA through overbillings, missed contractual milestones, continued billings after suspending services, and unreturned grant funds.[34]

---

[30] *Id.* at ¶ 68.

[31] Pl.'s Compl. at ¶¶ 63-75.

[32] *Id.* at ¶¶ 144-45, 159.

[33] Def.'s Am. Countercl. at ¶¶ 83-126.

[34] *Id.* at ¶¶ 84, 88, 91.

Counterclaim Count II again alleges that Syneos arbitrarily inflated time spent working, missed milestones, and continued billing after suspending services. This time labeling them as breaches of the implied covenant of good faith and fair dealing.[35]

Lastly, Counterclaim Count III alleges that Syneos fraudulently induced Odonate into the contract by representing that it would hit the discussed timelines, complete CONTESSA enrollment by February 2019, and provide the continuity of CRAs during the entire study.[36] Odonate says it justifiably relied on these statements and representations when entering into the MSA and IPA.[37]

## C. SYNEOS'S MOTION TO DISMISS

According to Syneos, all three of Odonate's counterclaims should be dismissed in part or in whole.[38]

First, Syneos posits that Odonate's breach-of-contract counterclaim should be dismissed in part. It argues that it did not inflate its units of time spent working; claiming that these alleged bills do not exist and that the grounds of the claim are

---

[35]  *Id.* at ¶ 99.

[36]  *Id.* at ¶116.

[37]  *Id*.

[38]  Pl.'s Mot. to Dismiss Countercls. at 10-34, Apr. 10, 2020 (D.I. 20).

baseless.[39]  It also counters that it did not violate the MSA's Termination Provision because the dispute concerning millions of dollars' worth of unpaid invoices from Odonate preempted any calculation of a potential termination payment.[40]

In response to Odonate's allegation about the suspension of services, Syneos claims that there was no provision in either agreement that obligates it to cease invoicing for its contractually-guaranteed fixed monthly services fees before termination of the contracts.[41]  Additionally, Syneos claims it did not violate any Investigator Grant provisions because the controlling agreement provides that these retainers will be held until the end of the study and applied against the final invoices.[42]

Next, Syneos says that Odonate's count for breach of the implied covenant of good faith and fair dealing fails because its claims are merely duplicative of its breach-of-contract count.[43]  In making this argument, Syneos emphasizes the near identical language of the two claims when describing overbilling, missed milestones, and suspension of services.[44]

---

[39]  *Id.* at 23.

[40]  *Id.* at 27.

[41]  *Id.* at 28.

[42]  *Id.* at 31.

[43]  *Id.* at 32.

[44]  *Id.*

Finally, Syneos posits that Odonate's claim for fraud fails because any representations the company made were true in light of its proven experience, expertise, and capabilities.[45] It also argues that contractual language bars the claim because it explicitly states the services would not guarantee any outcome of CONTESSA.[46] What's more, Syneos asserts, Odonate fails to allege any misrepresentations with sufficient specificity to satisfy Delaware Superior Court Civil Rule 9(b)'s pleading requirement.[47]

## III. STANDARD OF REVIEW

"Under Superior Court Civil Rule 12(b)(6), the legal issue to be decided is, whether a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[48] Under that Rule, the Court will

> (1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as "well pleaded" if they give the opposing party notice of the claim, (3) draw all reasonable inferences in favor of the non-moving party, and (4) not dismiss the claims unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[49]

---

[45] *Id.* at 10.

[46] *Id.* at 13-14.

[47] *Id.* at 15.

[48] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (quoting Superior Court Civil Rule 12(b)(6)).

[49] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011)).

"If any reasonable conception can be formulated to allow Plaintiffs' recovery, the motion must be denied."[50] And these well-established rules applied to the suit-initiating plaintiff's claims are of the same utility when assessing an answering defendant's (*i.e.* counter-plaintiff's) counterclaims.

The Court must accept as true all well-pleaded allegations for Rule 12(b)(6) purposes.[51] And every reasonable factual inference will be drawn in the non-moving party's favor.[52] If the claimant may recover under that standard, then the Court must deny the motion to dismiss.[53] This is because "[d]ismissal is warranted [only] where the plaintiff has failed to plead facts supporting an element of the claim, or that under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[54]

Delaware law requires those pleading fraud and misrepresentation to do so with particularity—a heightened pleading standard.[55] To satisfy Rule 9(b), a

---

[50]  *Id*. (citing *Cent. Mortg. Co*., 27 A.3d at 535).

[51]  *Anderson v. Tingle*, 2011 WL 3654531, at *2 (Del. Super. Ct. Aug. 15, 2011).

[52]  *Wilmington Sav. Fund Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super. Ct. Mar. 9, 2009) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).

[53]  *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[54]  *Hedenberg v. Raber*, 2004 WL 2191164, at *1 (Del. Super. Ct. Aug. 20, 2004).

[55]  Super. Ct. Civ. R. 9(b).

-10-

fraud or misrepresentation claim must allege:

> (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations. Essentially, the plaintiff is required to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim.[56]

## IV. DISCUSSION

The MSA provides that the Court shall apply New York law for any "claim, controversy, or dispute arising under or related to this Agreement."[57] Delaware courts will generally respect parties' rights to freedom of contract, and their choice of law to control that contract.[58]

### A. COUNTERCLAIM COUNT I – BREACH OF CONTRACT

Syneos contends that Odonate's breach-of-contract counterclaim should be dismissed *in part*. To state a claim for breach of contract, a plaintiff must adequately allege "the existence of a contract, the plaintiff's performance pursuant to that contract, the defendant's breach of its contractual obligations, and damages resulting from that breach."[59] Dismissal based on differing contractual interpretations is

---

[56] *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

[57] Pl.'s Compl., Ex A at 17 (MSA).

[58] *Ascension Ins. Holdings, LLC v. Underwood*, 2015 WL 356002, at *2 (Del. Ch. Jan. 28, 2015).

[59] *Webb v. Greater N.Y. Auto. Dealers Ass'n, Inc.*, 123 A.D.3d 1111, 1112 (N.Y. App. Div. 2014).

proper only if the movant's interpretation is the sole reasonable construction as a matter of law.[60] So if any reasonable conception allows Odonate's recovery for breach of contract, Syneos's motion to dismiss must be denied.[61] Here, Syneos invokes Rule 12(b)(6) to seek "dismissal" of but a few of Odonate's theories of recovery supporting its breach-of-contract counterclaim. But at the pleading stage of a case, a trial judge is not a robed gardener employing Rule 12(b)(6) as a judicial shear to prune individual theories from an otherwise healthily pled claim or counterclaim.

Odonate asserts five theories to support its breach-of-contract counterclaim against Syneos. First, it claims that Syneos improperly overbilled Odonate through its invoices and Monthly Service Fees.[62] Second, it says that these billing practices breached the MSA and IPA resulting in damages.[63] Third, Odonate alleges that Syneos missed all of the IPA milestones.[64] Fourth, it contends that Syneos improperly suspended services and failed to provide adequate transition support.[65]

---

[60] *L&L Broad. LLC v. Triad Broad. Co., LLC*, 2014 WL 1724769, at *3 (Del. Super. Ct. Apr. 8, 2014) (quoting *Deere & Co. v Exelon Generation Acquisitions, LLC*, 2014 WL 904251, at *4 (Del. Super. Ct. Mar. 7, 2014)).

[61] *Cent. Mortg. Co.*, 27 A.3d at 535.

[62] Def.'s Am. Countercl. at ¶¶ 87-88.

[63] *Id*. at ¶¶ 89-90.

[64] *Id*. at ¶ 91.

[65] *Id*. at ¶ 92.

Finally, it claims that Syneos breached the IPA by failing to return unused Investigator Grants.[66] Syneos addresses only a few of these theories in its dismissal motion—disputing the allegations of overbilling,[67] termination payment breach,[68] and retainer of grant payments[69]—but readily admitting that it cannot claim that the entire breach-of contract claim fails. The Motion itself reads that the counterclaim should be "dismissed in part."[70]

Syneos concedes that there is no Delaware state court decision on point regarding the propriety of a partial dismissal of a claim via Rule 12(b)(6).[71] Rather, Syneos claims that the Court's inherent powers allows it "to take actions reasonably necessary to administer justice efficiently, fairly, and economically."[72] Syneos contends that by declining to parse theories of a single claim, parties would be "highly incentivized" to move for dismissal of counts in their entirety, including

---

[66]  *Id.* at ¶ 93.

[67]  Pl.'s Mot. to Dismiss Countercls. at 23.

[68]  *Id.* at 27.

[69]  *Id.* at 30-31.

[70]  *Id.* at 22.

[71]  Pl.'s Suppl. Letter at 1, Nov. 20, 2020 (D.I. 43).

[72]  *Id.* at 2 (quoting 20 Am. Jur. 2d Courts § 36).

those counts that do not support dismissal.[73]  According to Syneos, this would result in a waste of both judicial and party resources.[74]  The Court is unconvinced.  If the benefits of such a 12(b)(6) paring exercise were so obvious, surely Delaware courts would regularly engage it.

But neither the parties' nor the Court's research revealed a single Delaware state court that allowed partial dismissal by plucking out individual allegations from a single claim on a Rule 12(b)(6) motion.[75]  And the Court declines Syneos's invitation to do so here.  The Court joins good company.[76]

It seems most courts addressing the practice disfavor parties using Rule 12(b)(6) to dismiss only parts of a claim.[77]  Courts have recognized that the Federal

---

[73]  *Id.*

[74]  *Id.*

[75]  *Id.* at 1; Def.'s Suppl. Letter at 1, Nov. 20, 2020 (D.I. 42).

[76]  Though Syneos urges that this Court is parting ways with one of its closest siblings— Delaware's Court of Chancery—the few samplings of that Court's claim-culling Syneos digs up are hardly of the same species Syneos suggests abounds. *E.g., Snyder v. Brady*, et al, Del. Ch., C.A. No. 2017-0072-VCL (transcript op.) (provided as Pl.'s Post-Br. Letter, Ex. A (D.I. 37)) (court, when deciding a motion to dismiss a claim of a violation of fiduciary duty and determining whether plaintiff could bring a derivative claim under the pleading requirements of Chancery Rule 23.1, found demand futility was satisfied for only two of four discrete alleged acts of wrongdoing); *Overdrive, Inc. v. Baker & Taylor, Inc.,* 2011 WL 2448209, at *7 (Del. Ch. June 17, 2011) (dismissing a claim that defendant allegedly breached a contract's dispute resolution provision because it was clearly time-barred by the contract's express terms while allowing concomitant claims derived from two other contractual obligations to go forward).

[77]  *See Federal Trade Commission v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 (D. Utah 2019) ("As many courts have recognized, parties may not use rule 12(b)(6) to dismiss only parts of a claim."); *M.N. v. United Healthcare Ins.*, 2020 WL 1644199, at *3 (D. Utah Apr. 2, 2020); *In re Netopia, Inc., Secs. Litig.*, 2005 WL 3445631, at *3 (N.D. Cal. Dec. 15, 2005).

Rules of Civil Procedure[78] allow for dismissal of a complaint for failure to state a claim, but they provide *no* basis "for striking individual legal theories."[79]  Indeed, courts do not, under Rule 12(b)(6), dismiss only some of the claim's allegations if the claim otherwise survives.[80]

This issue was addressed squarely in *BBL, Inc. v. City of Angola*, when a party in the suit tried to split a single claim into multiple components based on the elements of the applicable constitutional test.[81]  There the United States Court of Appeals for the Seventh Circuit explained, "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes all factual allegations that state a plausible claim for relief."[82]

---

[78]  The Court knows well that the Delaware Superior Court Rule 12(b)(6) standard is "conceivability" while the Federal Rules follow the "plausibility" standard.  *Central Mort. Co.*, 27 A.3d at 536-37.  But that distinction is of no moment here.  That's because the issue addressed here is not the ultimate survivability test to be applied to a given claim, but whether the Court applies its adopted survivability test to a claim (or counterclaim) as a whole or to its parts.  And on this issue Delaware and the federal courts are in agreement that they do not reach the merits of a survivability argument when a party inappropriately uses a motion to dismiss as a vehicle to remove just one or another theory of liability from a single claim.

[79]  *Zidek v. Analgesic Healthcare, Inc.*, 2014 WL 2566527, at *2 (N.D. Ill. June 6, 2014).

[80]  *Redwind v. Western Union, LLC*, 2019 WL 3069864, at *4 (D. Or. June 21, 2019).

[81]  *BBL, Inc. v. City of Angola*, 809 F.3d 317, 324 (7th Cir. 2015).

[82]  *Id*. (citation omitted) (emphasis in original); *see also M.N.*, 2020 WL 1644199, at *3.  *But see Int'l Bus. Machs. Corp. v. Priceline Grp. Inc.*, 2017 WL 1349175, at *6-7 (D. Del. Apr. 10, 2017) (where federal district court discussed *BBL* but found it inapplicable to the Rule 12(b)(6) examination of "separate sets of operative facts making up what should be separate claims of

Put simply, the Court must consider a claim or counterclaim its entirety when ruling on a Rule 12(b)(6) motion to dismiss.[83]  And so, the Court will not at this point parse the several individual theories comprising Odonate's breach-of-contract counterclaim.[84]  Syneos's Motion to Dismiss (or, more aptly, to trim down) Odonate's Amended Counterclaim Count I under this Court's Rule 12(b)(6) is **DENIED**.

## B. COUNTERCLAIM COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Under New York law, a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained if it is "intrinsically tied to the damages allegedly resulting from the breach of contract."[85]  So where the conduct and resulting injury alleged in the implied covenant claim are identical to the

---

inequitable conduct" subject to Rule 9(b) pleading standards, because to do otherwise, the district court felt, "would frustrate the very purpose of Rule 9(b)'s requirement that an inequitable conduct claim be pleaded with particularity.").

[83]  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); see also *Nudge, LLC*, 430 F. Supp. 3d at 1245-47 ("Rule 12(b)(6) permits a party to seek dismissal of a claim for 'failure to state a claim upon which relief can be granted.' Here, Defendants do not seek to dismiss Plaintiffs' claims in their entirety.").

[84]  *Nudge, LLC*, 430 F. Supp. 3d at 1246 ("[C]ourts may not dismiss only some of the claim's allegations if the claim otherwise survives.") (internal quotations omitted).

[85]  *Deer Park Enters., LLC v. Ail Sys., Inc.*, 870 N.Y.S.2d 89, 90 (N.Y. App. Div. 2008) (quoting *Canstar v. Jones Constr. Co.*, 622 N.Y.S.2d 730).

breach-of-contract claim, the implied covenant claim should be dismissed.[86] Here, the conduct and resulting damages alleged in Odonate's breach of the implied covenant of good faith and fair dealing claim mirrors its breach-of-contract claim.

Both Odonate's breach-of-contract counterclaim and breach of the implied covenant of good faith and fair dealing counterclaim complain that Syneos's over-billing, missed milestones, and improper suspension of service, caused Odonate's injuries.[87] Both claims arise from the same underlying conduct that Syneos inflated the amount of clinical sites used for the CONTESSA study.[88]

Further, both claims use the exact same language about the missed milestones and the alleged breach of the MSA. In regards to the missed milestones, Odonate's amended counterclaim states: "Syneos missed 100% of the contractually-agreed upon milestones in the IPA that were tied to a payment bonus or penalty, including missing the 600 patients randomized milestone by 6 months."[89] Regarding the breach of the MSA, the amended counterclaim states: "[i]n breaching the MSA by fraudulently overbilling Odonate, causing significant delinquencies and missing

---

[86] *Id.*; *see also Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 195 (E.D.N.Y. 2014) ("Under New York law, the same facts cannot give rise to both a claim for breach of contract and a claim for breach of implied duty of good faith and fair dealing.").

[87] Def.'s Am. Countercl. at ¶¶ 83-97, 98-113.

[88] *Id.* at ¶¶ 86, 99.

[89] *Id.* at ¶¶ 91, 101.

milestones, improperly suspending its services under the MSA and IPA, all while unilaterally failing to terminate the agreements, Syneos acted with intentional, willful, indifferent, conscious, or voluntary disregard of foreseeable injury and harm to Odonate."[90]

Odonate argues that Delaware Superior Court Rule 8(e)(2) allows a party to plead its breach of the implied covenant claim in the alternative to its breach-of-contract claim.[91] And Odonate cites *Hard Rock Café, Int'l., (USA), Inc. v. Hard Rock Hotel Holdings, LLC* to support this contention, arguing that "where the existence or meaning of a contract is in doubt, a party may plead a claim for breach of the covenant of good fair and fair dealing in the alternative."[92] But Odonate's argument fails here because the contracts between these parties are neither in doubt nor are they potentially void.

Because Odonate's claim for breach of the implied covenant mirrors its breach-of-contract claim, Syneos's Motion to Dismiss Count II of Odonate's Amended Counterclaims is **GRANTED**.

---

[90] *Id.* at ¶¶ 97, 113.

[91] Def.'s Opp'n. Br. at 32, May 13, 2020 (D.I. 21).

[92] *Hard Rock Café, Int'l., (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011).

## C. COUNTERCLAIM III – FRAUD IN THE INDUCEMENT

While New York substantive law governs this matter, Odonate's fraudulent inducement claim must meet Delaware Superior Court Civil Rule 9(b)'s heightened pleading standard. Moreover, no choice of law analysis is necessary here as there is no conflict between the Delaware and New York law that must be applied here.[93] Under New York law, when the alleged fraud "is indistinguishable from the breach of contract, no fraud cause of action arises."[94] Likewise, in Delaware, "where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort."[95]

Syneos argues that Odonate's fraudulent inducement claim fails on multiple grounds. First, Syneos contends that Odonate fails to satisfy the Rule 9(b) heightened pleading standard as Syneos made no false representations, the alleged misrepresentations are opinions of value, not fact, and Odonate failed to plead knowledge of falsity.[96] Second, Syneos insists that the MSA and IPA contain

---

[93] *Lagrone v. American Mortell Corp.*, 2008 WL 4152677, at *5 (Del. Super. Ct. Sept. 4, 2008).

[94] *Todd v. Grandoe Corp.*, 302 A.D.2d 789, 791 (N.Y. App. Div. 2003).

[95] *ITW Glob. Invs. Inc. v. Am. Indus. P'rs Capital Fund IV. L.P.*, 2015 WL 3970908, at *6 (Del. Super. Ct. June 24, 2015) (citing *Midland Red Oak Realty, Inc. v. Friedman, Billings & Ramsey & Co.*, 2005 WL 445710, at *3 (Del. Super. Ct. Feb. 23, 2005)).

[96] Pl.'s Mot. to Dismiss Countercls. at 15-20.

specific language of disclaimer that forecloses Odonate's fraudulent inducement claim.[97] Lastly, Syneos argues that Odonate's fraudulent inducement claim is duplicative of its breach-of-contract claim.[98] This last argument is dispositive here.

### 1. Odonate's Fraudulent Inducement Claim Pleads Separate and Distinct Conduct.

A breach-of-contract claim and a fraudulent inducement claim may coexist where the plaintiff alleges "that the defendant breached a duty that is independent of the duties imposed by the contract."[99] But Delaware courts will not allow a plaintiff to "bootstrap" a breach-of-contract claim into a fraud claim by baldly alleging the defendant never intended to perform its obligations.[100] "[A] fraud claim alleged contemporaneously with a breach of contract claim may survive, so long as the claim is based on conduct that is separate and distinct from the conduct constituting breach."[101] Fraud claims focused on the inducement to contract, rather than the performance of a contract, are considered separate and distinct conduct.[102]

---

[97] *Id*. at 12-13.

[98] *Id*. at 21-22.

[99] *Brasby v. Morris*, 2007 WL 949485, at *7 (Del. Super. Ct. Mar. 29, 2007) (citation omitted).

[100] *ITW Glob. Invs. Inc*, 2015 WL 3970908, at *6 (quoting *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *8 (Del. Super. Ct. Apr. 16, 2014)).

[101] *Furnari*, 2014 WL 1678419, at *8 (internal quotations omitted).

[102] *ITW Glob. Invs. Inc*, 2015 WL 3970908, at *6.

Odonate's fraudulent inducement claim alleges that Syneos's misrepresentations and omissions induced it to choose Syneos as its CRO and to enter into the MSA and IPA for management of CONTESSA.[103] In its best light, Odonate's fraudulent inducement claim is read to allege that Syneos knowingly and intentionally: (1) held itself out to be highly qualified and experienced to manage CONTESSA; (2) assured Odonate of its abilities to hit the discussed milestones and timelines; (3) engaged in pre-contractual concealment of its pending merger with INC Research; and (4) did all of this to induce Odonate into entering into the MSA and IPA.[104] Odonate alleges that it would not have entered into the MSA and IPA if it had known that Syneos did not have the capabilities and expertise it represented it had.[105] Odonate has met the heightening pleading standard imposed by Rule 9(b) to address the time, place, and content elements of fraud claims. Further, under the specific circumstances presented here, it has pled enough to distinguish its fraudulent inducement claim from its breach-of-contract claim. But separate and distinct conduct is just one hurdle Odonate's fraudulent inducement claim must pass over.

---

[103] Def.'s Am. Countercls. at ¶ 121.

[104] *Id.* at ¶¶115-18

[105] *Id.* at ¶ 117.

## 2. Odonate Fails to Plead Separate Damages to Sustain its Fraudulent Inducement Count.

Even if the conduct pled by Odonate is separate and distinct, it must still plead separate damages. Failure to do so is an independent ground for dismissal.[106] Under Delaware's pleading standard, the damages may not simply "rehash" the damages allegedly caused by the breach-of-contract.[107] Here Odonate's damages for the fraudulent inducement and breach-of-contract claims appear to be identical. Odonate's categorization of these damages under the guise of replacement costs is not enough to distinguish it from its contract damages. Because Odonate fails to plead damages that are separate from those of its breach-of-contract claim, its claim for fraudulent inducement should be dismissed.[108]

Odonate urges that it has adequately pled distinct damages arising separately from its contract claims because the damages pled regarding the fraudulent inducement claims it says "related to Syneos's inability to manage CONTESSA, such as 'replacement costs borne by Odonate' for taking over the operation of the

---

[106] *Cornell Glasgow, LLC v. La Grange Props. LLC*, 2012 WL 2106945, at *9 (Del. Super. Ct. June 6, 2012) ("[Plaintiff] has failed to plead fraud damages separate and apart from its breach damages. The fraud claim, therefore, must be dismissed for this reason as well.").

[107] *Khushaim v. Tullow Inc.*, 2016 WL 3594752, at *6 (Del. Super. Ct. June 27, 2016) (internal quotation marks and citations omitted); *Cornell Glasgow, LLC*, 2012 WL 2106945, at *8.

[108] *Khushaim*, 2016 WL 3594752, at *6-7 (dismissing claim for fraud where plaintiff "merely pled identical damages"); *ITW Global Invs., Inc.*, 2015 WL 3970908, at *5 (dismissing claim for fraud where plaintiff pleaded materially identical damages); *Cornell Glasgow, LLC*, 2012 WL 2106945, at *8 (dismissing fraud claims where breach-of-contract claim alleged identical damages).

project."[109] Odonate insists that these replacement costs are separate and distinct as they are due to "Syneos's significant delinquencies, missed milestones and poor performance" in regards to "what would have been the term of the IPA."[110] Whereas, Odonate contends, the damages pled arising out of its breach-of-contract claim include the inflated payments made, credits for missed milestones, and the failure to return the investigator retainer.[111]

Odonate's drawn distinctions are illusory; the harm alleged under both claims is the same. Both the replacement costs and overbilling are a rehashing of damages resulting from the alleged breach-of-contract. Odonate's fraudulent inducement claim is not separate and distinct from the breach-of-contract claim. So Odonate's claims with mirrored damages cannot survive.[112] Accordingly, Syneos's Motion to Dismiss Count III of Odonate's Amended Counterclaims is **GRANTED**.

---

[109] Def.'s Opp'n. Br. at 23-24; Def.'s Am. Countercls. at ¶¶ 122-23.

[110] Def.'s Am. Countercls. at ¶¶ 122-23.

[111] Def.'s Opp'n. Br. at 24; Def.'s Am. Countercls. at ¶¶ 100-02, 108.

[112] *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *7 (Del. Super. Ct. Mar. 13, 2017); *ITW Global Invs., Inc.,* 2015 WL 3970908, at *5; *Cornell Glasgow, LLC*, 2012 WL 2106945, at *8.

## V.  CONCLUSION

Because the Court will not, when deciding this Rule 12(b)(6) motion, parse the individual breach-of-contract theories Odonate propounds, Syneos's Motion to (Partially) Dismiss Odonate's **Amended Counterclaim I** is **DENIED**.  Because Odonate's pleadings of breach of the implied covenant of good faith and fair dealing claim and of fraud in the inducement impermissibly mirror that surviving breach-of-contract claim, Syneos's Motion to Dismiss is **GRANTED** as to Odonate's **Amended Counterclaims II** and **III.**

    **IT IS SO ORDERED.**

                                                    _____
                                                    Paul R. Wallace, Judge


Original to Prothonotary

cc:    All Counsel via File and Serve