# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PASCAL METRICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. N22C-01-175 MMJ CCLD |
| HEALTH CATALYST, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 21, 2022
Decided: June 15, 2022

On Defendant Health Catalyst's Partial Motion to Dismiss the First Amended
Verified Complaint
**GRANTED**

## OPINION

Brian E. Farnan, Esq., Michael J. Farnan, Esq., Farnan LLP, Wilmington, DE, Max
L. Tribble, Jr., Esq., Rocco F. Magni, Esq. (Argued), Susman Godfrey L.L.P.,
Houston, TX, Kalpana Srinivasan, Esq., Susman Godfrey L.L.P., Los Angeles,
CA, *Attorneys for Plaintiff*

F. Troupe Mickler IV, Esq., Ashby & Geddes, P.A, Wilmington, DE, Gregory M.
Saylin, Esq., Stephen Sansom, Esq. (Argued), Tyson C. Horrocks, Esq., Holland &
Hart LLP, Salt Lake City, UT, *Attorneys for Defendant*

**JOHNSTON, J.**

1

# FACTUAL AND PROCEDURAL CONTEXT

This case involves allegations of misappropriation of trade secrets and tortious interference with contractual relations. Plaintiff Pascal Metrics Incorporated ("Pascal") is a Delaware incorporated healthcare analytics start-up. Defendant Health Catalyst Incorporated ("Health Catalyst") is a Delaware healthcare data collection and storage corporation.

Pascal is in the business of developing an algorithm-based product that can reliably detect adverse health events—occurrences of harm arising out of a patient's care, rather than the patient's underlying condition—using real-time data. In 2009, Pascal began to develop an analytics software application that, among other things, allows clinicians and hospitals to identify adverse events in the field as they occur. The algorithms used in product development are known as "triggers." In order to protect its technology, Pascal required all employees to sign proprietary information and invention-assignment agreements. Pascal also required customers to sign non-disclosure agreements.

Stan Pestotnik ("Pestotnik") was the Chief Strategy Officer at Pascal. At the time of employment, he was contractually bound to keep Pascal's work product confidential. The agreement provides:

> At all times during [Pestotnik's] relationship with [Pascal] and thereafter, . . . hold in strictest confidence and []not disclose, use, or publish any of the [Pascal's] Proprietary Information (defined below),

except as such disclosure, use or publication may be required in connection with his work for [Pascal], or unless an officer of [Pascal] expressly authorizes such in writing. [Pestotnik] will obtain [Pascal's] written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to his work at [Pascal] and/or incorporates any Proprietary Information. [Pestotnik] hereby assigns to [Pascal] any rights he may have or acquire in such Proprietary Information and recognize that all Proprietary Information will be the sole property of [Pascal] and its assigns.

The agreement defines Proprietary Information as including "all confidential and/or proprietary knowledge, data or information of [Pascal]," including "trade secrets, inventions…formulas, source and object codes, data…improvements, discoveries, developments, designs and techniques."

Alejo Jumat ("Jumat") and Valere Lemon ("Lemon") were also employees of Pascal. Jumat and Lemon were under the same contractual limitation, requiring them to keep Pascal's work product confidential.

In 2015, Health Catalyst began to express interest in obtaining access to Pascal's confidential information and trade secrets. In May 2015, Dale Sanders ("Sanders"), Executive Vice President of Health Catalyst, organized a meeting between his employee and an acquaintance of Pascal. Pascal alleges that the purpose of that meeting was for an acquaintance of Pascal to provide an overview of Pascal's trigger analytics.

In May 2015, Sanders met with Pestotnik. Pascal alleges that Sanders expressed further interest in learning more about Pascal's work. Pascal states that

3

simultaneously, senior members of Health Catalyst were expressing interest in and attempting learn more about Pascal's algorithm. Pascal contends that subsequently, Health Catalyst expressed interest in acquiring Pascal or licensing its intellectual property. Pascal declined and forbade its employees from engaging with Health Catalyst.

Pascal alleges that Health Catalyst aggressively and overtly lobbied Pascal's employees for help obtaining information—despite Pascal's refusal to collaborate. In 2016, Pestotnik allegedly participated in a meeting with Health Catalyst "to help insure that [Health Catalyst was] firing on all cylinders." Eventually, Pestotnik, Juman, and Lemon became employees of Health Catalyst.

Eighteen months after Pestotnik joined Health Catalyst, the company released a trigger-based product called Patient Safety Monitor. A press release attributed the product's release to former Pascal employee, Pestotnik.

Pascal brought this action alleging misappropriation of trade secrets and tortious interference with contractual relations. On May 26, 2021, Health Catalyst filed its Motion to Dismiss arguing: (1) Utah law applies to this action; (2) Pascal's claim for tortious interference with contractual relations is preempted by the Utah Uniform Trade Secrets Act (UTSA); and (3) failure to state a claim for tortious interference with contractual relations pursuant to Rule 12(b)(6).

4

On September 14, 2021, the Court of Chancery heard oral argument. Vice Chancellor Zurn applied a choice-of-law analysis and issued her decision on the record. The Court of Chancery held that Utah law governs Count II, Tortious Interference with Contractual Relations. The remaining issues of preemption and failure to state a claim were taken under advisement.

On January 19, 2022, the action was transferred to this Court. This Court will address the issues of preemption and failure to state a claim pursuant to Rule 12(b)(6).

## STANDARD OF REVIEW

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[1] The Court must accept as true all well-pleaded allegations.[2] Every reasonable factual inference will be drawn in the non-moving party's favor.[3] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[4]

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del.).
[2] *Id.*
[3] *Wilmington Sav. Fund. Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del.)).
[4] *Spence*, 396 A.2d at 968.

5

# ANALYSIS

The Court of Chancery has held that Utah law governs this action.[5]

Under Utah law, the UTSA "preempts 'conflicting tort, restitutionary, and other law[s] of [Utah] providing civil remedies for misappropriation of a trade secret.'"[6] "UTSA preemption reaches any state law claim that is based on allegations of misuse of confidential information, regardless of whether the claim contains additional, separate allegations."[7] The purpose of the preemption provision is to streamline trade secret law by preserving a single tort action under state law for misappropriation of a trade secret.[8]

Health Catalyst argues that the tortious interference claim relies on the same conduct as the underlying trade secrets claim. The First Amended Complaint alleges misappropriation of trade secrets, stating: (1) Health Catalyst also willfully used Pascal's trade secrets in, or in the development of, its Patient Safety Monitor product and related analytics offerings without Pascal's consent;[9] (2) Health Catalyst induced an employee to violate non-compete and non-disclosure

---

[5] Oral argument was held on September 14, 2021. Vice Chancellor Zurn issued a bench Opinion in which the Court of Chancery applied a choice-of-law analysis. The Court of Chancery granted the Motion to Dismiss in part, holding that Utah law governs this action. The remaining issues were taken under advisement.

[6] *Giles Const., LLC v. Tooele Inventory Sol., Inc.*, 2015 WL 3755863, at \*6 (D. Utah).

[7] *Id.*

[8] *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 274 P.3d 317, 329 (Utah Ct. App.).

[9] First Amended Complaint ¶ 59.

agreements by coming to work at Health Catalyst and bringing proprietary files.[10]

Health Catalyst asserts that the only conduct identified in the First Amended

Complaint is preempted by the UTSA.

In *Giles Construction, LLC v. Tooele Inventory Solution, Incorporated*, the

United District Court for the District of Utah found: the "UTSA preempts claims

that are to some degree based on—or, dependent on—misuse of information even

if they are not based *solely* on the misuse of information."[11] "[I]f the claim fails

without the allegations regarding misuse of information, the UTSA preempts it."[12]

In *Giles,* the plaintiff alleged misuse of proprietary information. The *Giles*

plaintiff asserted a claim for interference with contractual relations, arguing that

the defendants improperly disclosed and used trade secrets to secure a construction

bid at a lower price. The *Giles* plaintiff argued that the UTSA did not preempt its

interference claim because it is an alternative claim not solely based upon

misappropriate of trade secrets.[13] The United States District Court found that the

tortious interference claim was based on the alleged unauthorized use of

information. The District Court held that the claim was preempted because

---

[10] *Id* at ¶ 57.
[11] 2015 WL 3755863, at *6 (D. Utah).
[12] *Id.*
[13] *Id.*

"'without reliance on the misuse of confidential information,' each claim would fail as a matter of law."[14]

In *GeometWatch Corporation v. Hall*,[15] the United States District Court for the District of Utah held that the plaintiff's claim for tortious interference was preempted by the trade secrets claim. The *GeometWatch* plaintiff entered into a non-disclosure agreement with the *GeometWatch* defendants to keep proprietary information confidential. Subsequently, the *GeometWatch* plaintiff brought an action alleging multiple causes of action including both misappropriation of trade secrets and intentional interference with existing or potential economic relations. The United States District Court found that the non-UTSA claim for intentional interference would fail without the allegations regarding the misuse of information.[16]

> [P]roof of the non–UTSA claim of intentional interference against the Individual Defendants would also simultaneously establish a claim for misappropriation of trade secrets, the intentional interference claim against the Individual Defendants is preempted by the UTSA. Preemption is therefore an alternative basis on which to dismiss the intentional interference claim against the Individual Defendants.[17]

In *Smart Surgical, Incorporated v. Utah Cord Bank, Incorporated*,[18] the United States District Court for the District of Utah found that the UTSA

---

[14] *Id.*
[15] 2017 WL 1136946 (D. Utah).
[16] *Id.* at *19.
[17] *Id.*
[18] 2021 WL 734954 (D. Utah).

preempted *Smart Surgical's* claim for tortious interference because the factual allegations underlying the claim arose from the alleged misappropriation of trade secrets. The *Smart Surgical* plaintiff alleged that the *Smart Surgical* defendants misappropriated trade secrets by wrongfully obtaining and retaining secrets from former employees of the plaintiff.[19] The *Smart Surgical* plaintiff also alleged improper use of confidential customer information at the request of the defendants in order to divert sales for the benefit of the defendants. The *Smart Surgical* plaintiff further argued that defendants violating industry standards was the basis of the tortious interference claim. The District Court held that the factual allegations underlying the claim arose from the misappropriation of trade secrets.

> Smart Surgical argues that [Defendants] violated industry standards by encouraging the former employees to violate their non-compete clauses. But the employees violated their non-compete clauses by using Smart Surgical's confidential client lists to compete with Smart Surgical. In other words, the misappropriation of the lists is the basis for the violation of the non-compete clauses.[20]

Pascal contends that the claims should be governed by the Utah Code. Utah Code Section 13-24-8 provides that Chapter 24 (Uniform Trade Secrets Act) does not affect "contractual remedies whether or not the claim is based upon misappropriation of trade secrets."[21]

---

[19] *Id.* at *1.
[20] *Id.* at *4.
[21] Utah Code Ann. § 13-24-8(2)(a).

9

Pascal relies on *CDC Restoration & Construction, LC v. Tradesmen Contractors*, where the Utah Court of Appeals stated that "UTSA's preemption provision does 'permit individuals and corporate entities to protect their valuable commercial information contractually, regardless of whether such information meets the statutory definition of trade secret.'"[22]  However, the Utah Court of appeals opined:

> [A] plaintiff may be left unable to prove trade secret status under the UTSA, yet barred by it from proceeding on any other theory. As we read the preemption provision of the UTSA, this is precisely its intended result. A contrary approach would " 'render the statutory preemption provision effectively meaningless,' " leaving prior law untouched and converting an exclusive remedy into " 'just another basis for recovery.' "
>
> ***
>
> In light of the purpose of the UTSA and the statutory mandate, which dictates that we construe it "to make uniform [trade secret] law ... among states enacting it,"  we join the majority of courts that have addressed this issue and hold that the UTSA preempts claims based on the unauthorized use of information, irrespective of whether that information meets the statutory definition of a trade secret.[23]

The Court of Appeals held: "In light of the preemption provision's purpose 'to preserve a single tort action under state law for misappropriation of a trade secret,' we conclude that a claim is preempted to the extent that it is based on factual allegations supporting a misappropriation of trade secrets or otherwise confidential information"[24]

---

[22] *CDC Restoration,* 274 P.3d 317, 330 (Utah Ct. App.) (internal quotations omitted).
[23] *Id.* (internal citations omitted).
[24] *Id*. (internal citations omitted).

Pascal further relies on Delaware law for the proposition that "[t]ort[i]uous interference is simply a secondary means to vindicate contract rights against those not in privity on the contract."[25] The Court of Chancery has ruled that Utah, not Delaware, law controls Pascal's claims.

Pascal attempts to distinguish *GeometWatch*, arguing that it is specific to claims regarding tortious interference with *non-contractual* business relations. Further, Pascal alternatively asserts that its tortious interference claims are asserting Health Catalyst's interference with employee's non-compete obligations are not preempted. Pascal argues that these claims are grounded in contract.

Pascal provided little authority in its briefing to support its arguments.[26] During oral argument, Pascal relied on *ClearOne Communications v. Chang*,[27] arguing that it stands for the proposition that—as long as a defendant denies trade secret status—there could be no preemption. The *ClearOne* defendant argued that

---

[25] *Atl. Med. Specialists, LLC v. Gastroenterology Associates, P.A.*, 2017 WL 1842899, at *16 (Del. Super.).

[26] During oral argument, Pascal cited *Vicidiem, Inc.* v. *Christensen*, in which the Utah United States District Court found that a claim for tortious interference was not preempted. The Court only reasoned "Plaintiffs have alleged breaches of the duty of confidentiality independent of Plaintiffs' trade secrets claims. Accordingly, Plaintiffs' claims are not preempted by the UTSA." 2019 WL 4932822, at *3 (D. Utah); Plaintiff also cites *Big Squid, Inc. v. Domo, Inc.,* in which the court held that the tortious interference claim was not preempted because it concerned a different subject matter and different rights. However, that case concerned the Copyright Act. "The subject matter of Domo's tortious interference claim is outside the scope of claims covered by the Copyright Act and the UTSA…. Additionally, Domo's tortious interference claim concerns different rights than copyright and UTSA claims." 2019 WL 3555509, at *16 (D. Utah).

[27] 2007 WL 4376125 (D. Utah).

unjust enrichment was preempted by *ClearOne's* misappropriation claim. The

United States District Court held:

> UTSA preempts only conflicting remedies that are based on the misappropriation of a trade secret. As the statute states, the UTSA 'displaces **conflicting** tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret ....'. Because Biamp has argued ***that there was no trade secret,*** and that there was no misappropriation, it stands that there can be no preemption at this phase of the litigation.[28]

> Health Catalyst contends that *ClearOne* is no longer good law in Utah.

After *ClearOne*, the Utah Court of Appeals in *CDC Restoration* held: "[W]e join

the majority of courts that have addressed this issue and hold that the UTSA

preempts claims based on the unauthorized use of information, irrespective of

whether that information meets the statutory definition of a trade secret."[29]

> Pascal does not identify any facts independent of the facts underlying the

misappropriation of trade secrets claim. In its briefing, Pascal argues:

> Myriad facts indicate that Health Catalyst had misappropriated Pascal's trade secret triggers and application: (1) the implausibly rapid development time of Health Catalyst's product; (2) Pestotnik's months of covert work for Health Catalyst; (3) Pestotnik's misappropriation of Pascal trade-secret algorithms during the time he was engaged in covert work for Health Catalyst and immediately preceding his formal employment with Health Catalyst; (4) Health Catalyst's poaching of two additional Pascal employees who worked closely on the RTM product, in violation of their non-compete agreements; (5) those employees' active concealment of their new employment with Health Catalyst; (6) Health Catalyst's public recognition of its algorithms as

---

[28] *Id.* at *4.
[29] 274 P.3d 317, 330 (Utah Ct. App.).

12

coming from Pestotnik, coupled with its intentional obfuscation of Pestotnik's history with Pascal; and (7) Health Catalyst's use of confidential Pascal demo materials that displayed Pascal's trade secret process flows, information structure, data fields, features, and even the same color scheme and fictitious patient information.[30]

Additionally, Pascal does not contest that the cause of action involves a trade secret.

The Court finds that Pascal's claim for tortious interference is based upon the same facts as the allegations of misappropriation of trade secrets. The Court of Chancery already has found that Utah law governs this action. Therefore, the UTSA applies. Pascal's claim for tortious interference with contractual relations is preempted.

## CONCLUSION

The Court finds that Pascal's claim is based upon the same facts as the claim for misappropriate of trade secrets. The Court finds that the UTSA governs this action. The claim for tortious interference with contractual relations is preempted. **THEREFORE,** Defendant's Partial Motion to Dismiss the First Amended Verified Complaint for tortious interference with contractual relations (Count Two) is hereby **GRANTED**.

**THEREFORE**, Health Catalyst's Partial Motion to Dismiss for failure to state claim is moot.

---

[30] Pl.'s Br. at 10.

**IT IS SO ORDERED.**

<u>*/s/ Mary M. Johnston*</u>
The Honorable Mary M. Johnston